## Staunton.

### BOXWELL & ALS. v. AFFLECK & ALS.

#### September 25, 1884.

CHURCHES AND CHURCH PROPERTY—*Case at Bar.*—In 1854 N. devised, after C.'s death, a house and lot at B., to the trustees of the M. E. church at B., for the use of said church. B. was within the limits of the Baltimore conference then attached to the M. E. church, but afterwards, in 1866, attached to the M! E. church south. In 1876 a joint commission, appointed by the general conferences of the two churches, awarded this house and lot to the M. E. church south. C., the life tenant, died in 1881. Upon a bill by the trustees of the M. E. church south, at B., against those of the M. E. church at B., to determine the title to this house and lot—

HELD:

1. Baltimore conference, by its said action in 1866, did not become entitled to the benefit of the plan of division adopted in the general conference of the church in 1844. *Hoskinson* v. *Pusey*, 32 Gratt. 428.:

2. The devise was to a particular congregation of the M. E. church; and hence was valid. It was not to that church in a general sense. If it had been, it would have been invalid. Code 1873, chapter 76, § 8.

3. The general conference of the M. E. church had no power, directly or indirectly, to transfer the property of the said congregation of the M. E. church at B. to the M. E. church south.

4. Hence the joint commission at Cape May had no power to make such award.

Appeal from decree of circuit court of Clarke county rendered 2d November, 1883, in the suit of P. J. Affleck, James W. Thomas, G. E. S. Phillips, John S. Thompson, John M. Pope,

John S. Ritchie and Alexander Marshall, who sued as trustees of the Methodist Episcopal church south at Berryville, against Charles Boxwell, Charles Radley, John Jackson, John W. Bremer, C. V. B. Boxwell, and John A. Blake, duly appointed trustees of the Methodist church at Berryville. The object of the suit was to determine the title to a certain house and lot in Berryville, which, by his will in 1854, Joseph Noble devised, after the death of Elizabeth Clink, to the trustees of the Methodist Episcopal church at Berryville and their successors, to hold for the use of said church for a parsonage. The complainants claimed the property on two grounds: (1). That they are the successors of the trustees of the M. E. church at Berryville in 1854, and the persons designated by the said will as its beneficiaries. (2.) That a joint commission appointed by the general conferences of the M. E. church and M. E. church south in 1876, to adjust matters in controversy between the two churches, had awarded the property to the M. E. church south. The defendants answered, denying that the complainants were entitled under the will, or under the award, as the joint commission was without authority to make it. The circuit court adjudged the property to the complainants. From which decree, the defendants obtained an appeal and *supersedeas* from one of the judges of this court. Opinion states the facts more in detail.

*McDonald & Moore*, for the appellants.

*Marshall McCormick*, for the appellees.

LACY, J., delivered the opinion of the court:

This suit was instituted by the appellees, as trustees of the Methodist Episcopal church south at Berryville, against the appellants, as trustees of the Methodist Episcopal church at Berryville, to determine the ownership of real estate situated in the town of Berryville, in the county of Clarke, devised by the

will of Joseph Noble, deceased, to the trustees of the Methodist Episcopal church of the said town of Berryville.

The said will was admitted to probate in 1854. The property was devised to Elizabeth Clink for life by the second clause. The third clause is as follows:

"After the death of Elizabeth Clink, I will and devise said house and lot to the trustees of the Methodist Episcopal church at Berryville, and their successors forever, to be held in trust by them for the use and benefit of the said Methodist Episcopal church, but in no event to be applied to any other than pious purposes, would say for a parsonage, in preference to anything else."

The appellees claim to be the successors of the trustees of the Methodist Episcopal church at Berryville in 1854, and the persons designated by the will as beneficiaries of the will, and they appear to have belonged to the Methodist Episcopal church up to the year 1861. In that year, the Baltimore conference to which they were attached, and which, before that time, had belonged to the Methodist Episcopal church, severed its connection with the Methodist Episcopal church, and united with the Methodist Episcopal church south. With which church the said appellees and the church to which they belonged, united and became attached to the said Methodist Episcopal church south. In the division of the Methodist Episcopal church, which occurred in 1844, the Baltimore conference adhered to the Methodist Episcopal church, and this church at Berryville remained with that conference in that church and did not unite in the movement which culminated in the general convention which was held at Louisville, Kentucky, in the year 1845, which declared the jurisdiction heretofore exercised over the conferences there assembled as entirely dissolved, and established a separate ecclesiastical connection to be known by the style and title of the Methodist Episcopal church south; but the Baltimore conference decided in 1846 to take no part in the new movement. The rights of property, in accordance with the

general plan of separation adopted by the united church, were settled by the courts in the years following. *Smith* v. *Swormstedt,* 16 Howard, U. S. R. 288. *Gibson* v. *Armstrong,* 7 B. Monroe R. 481. *Brooke* v. *Shacklett,* 13 Gratt. 301.

After the action of the Baltimore conference in 1846, referred to above, questions of property belonging to the several congregations again arose, and disputes arising, the controversy found its way into the courts. In the case of *Hoskinson & others* v. *Pusey & others* and the case heard with it of *White & others* v. *King & others,* a dispute concerning a church in one case and a parsonage in the other, came before this court. The property in question in these cases belonged to congregations attached to the Baltimore conference and had followed that conference in its adherence to the Methodist Episcopal church in 1846, and when the Baltimore conference separated from the said church and remained for some years unconnected with any other conference, and also when the said Baltimore conference reunited itself with the Methodist Episcopal church south after the close of the war, these congregations continued their connection with it, and in these suits claimed the property of the church under the general plan of separation of 1844 and under the decisions of the courts above referred to.

Upon that point the judge, delivering the opinion of this court in those cases, said: "I find nothing in the plan devised in 1844 giving countenance to the idea that after the contemplated separation had been carried into effect a border conference should have the right to do more than merely make choice between the two churches—either to continue its connection with the church north or attach itself to the church south. After the southern conferences had organized themselves as a separate and distinct ecclesiastical body it could hardly have been designed by the general conference of the Methodist Episcopal church to sanction and provide for a further disintegration to take place in some emergency that might arise in the indefinite future. The object was a peaceful, speedy and permanent settlement of

the pending difficulties. The action at Staunton in 1861, fifteen years after the adoption of the resolutions in Baltimore, was not based upon any claim of right under the plan of separation devised in 1844." So the first position taken by the appellants was held to be untenable. And as to the claim that the war had severed the churches, the judge said further: "I do not think the war, resulting as it did, had any such effect. One of the consequences was a suspension during hostilities of all intercourse between citizens not subject to the dominion of the same belligerent party. The property rights of the members of the Methodist Episcopal church, worshiping or entitled to worship at Harmony church building, were not extinguished or impaired by the war. The congregation, although within the territorial limits of the Baltimore conference, which was a border conference, was not a '*border society*' within the meaning of the resolutions of 1844, as was the case in *Brooke and others* v. *Shacklett*, and hence had no authority under these resolutions to determine by a majority of its members its adherence to the church south."

And the circuit court having sustained the claim of the trustees of the Methodist Episcopal church, that decision was affirmed by this court. But the appellees assert their right to the property in question upon the ground that the general conference of the Methodist Episcopal church and the general conference of the Methodist Episcopal church south, had appointed a joint commission in 1876 to adjust matters of controversy between the two churches, which joint commission, sitting at Cape May in that year, had awarded the property in dispute to the Methodist Episcopal church south.

It will be remembered that this adjudication on the part of the joint commission was in the year 1876. Under the will of Joseph Noble the property in dispute was devised to the Methodist Episcopal church at Berryville after the death of the life tenant, which did not occur until the year 1881. This property is claimed by the litigants in this cause under the will of Joseph Noble, which was admitted to probate in 1854. It can be

claimed by them in no other way. The power of disposal was in the said Joseph Noble and no other. He devised it to the trustees of the Methodist Episcopal church at Berryville. Since the year 1844, the Methodist.Episcopal church south had been as distinct a church organization from that church as any other denomination in the country. In 1854 the Methodist Episcopal church south was then in existence as such, and well known to the testator, but he did not devise this property or any other property to that church, but to some other and distinct denomination of Christians. In this suit it is claimed by the plaintiffs in the circuit court and so insisted here, that the general conference of the two churches had devised a joint commission which had given this property to the Methodist Episcopal church south, and then in substance its action had been ratified by the two general conventions. It may be of use in considering this action, to consider how this property, so devised to the trustees of the church at Berryville, is held.

This court has said upon a similar question, in *Hoskinson* v. *Pusey, supra,* 431, " The deed is the same in substance as the deed in *Brooke* v. *Shacklett,* and the construction must be the same. According to that construction the conveyance is not for the use of the Methodist Episcopal church in a general sense. Such a conveyance in this state would be void. But it is a conveyance for the use of a particular congregation of that church, in the limited and local sense of the term—that is, for the members, as such, of the congregation of the Methodist Episcopal church, who, from their residence at or near the place of public worship, may be expected to use it for that purpose. Such a conveyance is valid under our statutes. See Code 1873, ch. 76, sec. 8. Who, then, are the beneficiaries entitled to the control and use of the church building? Looking to the deed alone, the answer would be, those who are members of the congregation or local society, and, as such, members of the Methodist Episcopal church."

In this case, the appellees do not claim to belong to the Methodist Episcopal church at all, but to a different church

altogether.   But they say this property has been given them by this award of the joint commission.   This joint commission could have no power in the premises, other than that derived from the general conference of the two churches acting separately.   What control, interest, or power over this property did the general conference of either church have?   It was not granted to them.   If it had been, such a grant would have been void.   It was granted to certain trustees for the use of a local congregation or society, and as such, was effective in them, not for the use of the church generally, but to the aids and uses of the grant itself, to be used for pious purposes by the local congregation.   It seems to be clear that the general conference had no power over the property of this congregation whatever.   It was not granted to, and was not held by them.   Their jurisdiction over the church in all matters of church discipline is not controverted; but the general conference itself disclaimed the right to dispose or transfer a church-house or parsonage, held, according to the laws of the state, by trustees properly appointed, without the consent of the trustees.   The record shows that the appellants are the duly appointed trustees of the Methodist Episcopal church at Berryville, and it is not pretended that they have given any consent in the premises, nor can this action of the joint commission be claimed to be more effective as an award.   There does not appear to have been any submission by the appellants in any form whatever.   So far as they are concerned the action adverted to seems to have been taken altogether without their concurrence, and, indeed, without notice to them.   It is clear that the appellees, as trustees of the Methodist Episcopal church south, can have no claim to the benefit of the devise in the will of Joseph Noble, which was to the trustees of another church.   And the circuit court having decreed in favor of their claim, we are of opinion to reverse the decree complained of, and dismiss the bill of the complainants.

DECREE REVERSED.