## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### DAVIS AND ALS., TRUSTEES, V. MAYO AND ALS.

#### JUNE 17th, 1886.

1. UNLAWFUL DETAINER—*Ejectment.*—In the latter action, title or right of possession is always involved. The design of the former is to protect the actual possession whether rightful or wrongful, and to afford summary redress and restitution. Forcible entry of owner is unlawful. Entry of stranger is unlawful, whether forcible or not. Judgment only restores the *status quo*, but settles nothing as to the title or right of possession. *Pannill* v. *Coles*, 81 Va. 380.

2. IDEM—*Possession—Trustees—Title—Case at bar.*—Premises granted in 1857 for Springfield Division, came into possession in 1872 of D. and others, trustees, who kept possession until February 15, 1884, when M., claiming to act with authority, declaring the division's charter revoked, took possession of the premises and organized new division under same name. Majority of old division repudiated M.'s action, changed the name of old division, and again elected D. and others trustees. On 18th, M. and others got the court to appoint themselves trustees of new division. On 26th, D. and others failed in an attempt to get the court to rescind its order of 18th. D. and his associates then brought unlawful detainer against M. and his associates to recover possession of the premises—

HELD:

　　1. The withholding of possession by M. and his associates is unlawful, without regard to the title or right of possession of D. and his associates, the latter being in possession when M. and his associates took possession.

　　2. The beneficiaries under the grant of 1857 are such of the members of the division as from their residence would be expected to use the premises for the specified purpose.

　　3. No title to the premises was conferred on M. and his associates by the order of 18th February, 1884.

4. Even if M. had had authority to revoke the division's charter, yet his action could not transfer the title from those it was then vested in.
5. The title of D. and his associates was not affected by the court's refusal to annul its order of 18th February, nor by the change of the name of the division.

Error to judgment of hustings court of city of Richmond, rendered May 5, 1884, in an action of unlawful detainer, wherein T. Wiley Davis and others, as trustees of Springfield Division, No. 167, Sons of Temperance, are plaintiffs, and George W. Mayo and others are defendants. The verdict of the jury was for the defendants, and the trial court entered judgment accordingly. During the trial the plaintiffs excepted to three decisions of the court given against them, and tendered their three bills of exceptions, and obtained a writ of error and *supersedeas* from one of the judges of this court.

Opinion states the case.

This case was argued at Richmond and decided at Wytheville.

*S. M. & C. L. Page,* for the plaintiffs in error.

*George W. Mayo,* for the defendants in error.

LEWIS, P., delivered the opinion of the court.

This was an action to recover possession of a certain parcel of land situate in the city of Richmond. The action was unlawful detainer, the difference between which and the action of ejectment it may be well to advert to. The law upon the subject has been well summarized as follows:

"In an action of ejectment the title or right of possession is always involved. Where the plaintiff cannot recover without showing that he is entitled to the possession, and the defendant

without having any right to the possession himself, may generally prevent a recovery by the plaintiff by showing an outstanding right of possession in another.

"The remedy for a forcible or unlawful entry or detainer was designed to protect the actual possession, whether rightful or wrongful, and to afford summary redress and restitution. The entry of the owner is unlawful, if forcible, and the entry of any other person is unlawful, whether forcible or not. If the defendant enter unlawfully, the plaintiff is entitled to recover, without any regard to the question of his right of possession. Hence, this action may be maintained where trespass will not lie; as, for instance, against the owner of the land. If he have a right of entry, he will not commit a *trespass* by entering, though with force, unless he also commit a breach of the peace. The law will not give damages against him in an action of trespass *quare. clausum fregit;* but in an action of unlawful detainer it will compel him to restore the possession.

"When the plaintiff shows that he has been turned out of possession forcibly, or by one having no right to do so, he has made out his right to restitution, which cannot be defeated by any evidence in regard to the title or right of possession. The judgment has only the effect of placing the parties in *statu quo;* it settles nothing even between them in regard to the title or right of possession, it being declared by statute that 'no such judgment shall bar any action of trespass or ejectment between the same parties, nor shall any such judgment or verdict be conclusive in any such future action of the facts therein found.'" Bart. Law Pr. 372; *Olinger* v. *Shepherd,* 12 Gratt. 462; *Power & Kellog* v. *Tazewells,* 25 Id. 786; *Pannill* v. *Coles,* 81 Va. 380; Code 1873, ch. 130, sec. 6.

With this view of the law as to the nature of the present action, we proceed to the consideration of the case upon the facts.

It appears from the certificate of facts in the record, that by deed dated the 12th day of January, 1857, the premises in controversy were conveyed by William Catlin and others, for valuable consideration, to Austin Gentry and others, and their successors as trustees for the use and benefit of the Springfield Division, No. 167, Sons of Temperance; the intent and design of the trust, as expressed in the deed, being to "put the said land and buildings under the control and for the use of said Springfield Division, Sons of Temperance, in the manner set forth and contained in the ninth, eleventh, thirteenth, and fourteenth sections of chapter 77, of the Code of Virginia" (of 1849).

These provisions of the Code are substantially the same as those now contained in the corresponding sections of chapter 76 of the Code of 1873.

It also appears that, pursuant to the provisions of the statutes just mentioned, the plaintiffs in 1872 were appointed trustees by an order of the circuit court of the City of Richmond in the place and stead of the said Gentry and his associates, and that they and those whom they represented continued in undisturbed possession of the premises until the 15th of February, 1884; that on the night of that day, at a meeting of the division, the defendant, Mayo, claiming to be acting as the Grand Worthy Patriarch of the Grand Division of Sons of Temperance of Virginia, entered the hall, declaring that the charter of the division had been revoked by him, and then and there assumed to organize a Division of Sons of Temperance under the same name as that of the old, namely, Springfield Division, No. 167, Sons of Temperance; that a majority of the members of the old division then present refused to co-operate with the said Mayo in his action, or to recognize his authority in the premises, and withdrew from the hall; that a few days thereafter a majority of the members of the old

division—all except four—met together, and, ignoring the previous action of the said Mayo, changed the name of their division to "Springfield Division, No. 167, *Independent* Sons of Temperance," and again elected the plaintiffs as their trustees to hold the premises in controversy for them.

It was also proved that afterwards, to wit, on the 18th of February, 1884, the said Mayo and others, the defendants, without notice to the plaintiffs, or to any one assuming to represent the old division, moved the circuit court of Richmond to appoint them (the defendants) trustees for "Springfield Division, No. 167, Sons of Temperance," which motion was granted, the order of the court being as follows:

"On the motion of Springfield Division, No. 167, Sons of Temperance, and it appearing to the court that certain real estate conveyed to the trustees for the benefit of said division, is lying in the city of Richmond, it is ordered that the trustees holding the said real estate and personalty to the use and benefit of said division be changed, and that G. W. Mayo, Wm. T. Allen, John W. Dobson, Jas. M. Ellett, Reuben T. Howard, and Wm. J. Gentry be appointed and constituted trustees of the said division, to be vested as such with all the powers conferred by chapter 76 of the Code of 1873."

It was also proved that the said Mayo was duly elected Grand Worthy Patriarch, or chief officer of the Sons of Temperance of Virginia, at a regular meeting of the Grand Division of the order, on the 31st of October, 1883, at which the matter of Springfield Division, No. 167, Sons of Temperance, in not having conformed to the requirements of its charter, and the rules and usages of the order, was discussed, and the decision of the whole matter left to the said Mayo as chief officer as aforesaid.

It was also proved that the constitution and by-laws of the Grand Divison provide that a charter cannot be taken from

a subordinate division, unless by two-thirds vote of the whole number present at a regular meeting of the Grand Division, and then only by the subordinate division having a right of appeal to the National Division; that the charter of the old Springfield Division, No. 167 was granted so long as the division conformed to the rules and usages of the order of Sons of Temperance, and that the charter was revoked by Mayo for non-conformity to those rules and usages.

It was also proved that on the 26th of February, 1884, the plaintiffs moved the circuit court of the city of Richmond to revoke and annul its previous order, of the 18th of the same month, appointing the defendants trustees, and that upon consideration thereof the motion was dismissed.

It was also proved that upon the revocation of the charter by Mayo, the members of the new division took possession of the premises in controversy, and that the defendants, as their agents and trustees, have since held possession thereof. And, lastly, it is certified that "it was *not proved* that the plaintiffs had ever been appointed by any court trustees of the Springfield Division, No. 167, *Independent* Sons of Temperance."

These are all the facts to which special reference need be made, as upon them the case must turn.

It is clear from the language of the deed, construed in the light of the repeated decisions of this court, that the beneficiaries in the deed of January 12th, 1857, are the then members of Springfield Division, No. 167, Sons of Temperance, and their successors; "that is, the members as such of the" division, "who from their residence at or near the place of meeting, may be expected to use" the property for the purpose specified in the deed. Any other construction would render the conveyance void for uncertainty under the laws of this State. *Brooke* v. *Shacklett*, 13 Gratt. 301; *Hopkinson* v. *Pusey*, 32 Id. 428; *Wade* v. *Hancock and Agee*, 76 Va. 620; *Boxwell* v. *Affleck*, 79 Id. 402.

The question, then, is, Who, in this proceeding, are the representatives of the beneficiaries in that deed? If the defendants are not, then their withholding of the possession of the premises in controversy is unlawful, and the plaintiffs are entitled to recover.

The judgment of the lower court is sought to be maintained on the ground—first, that the action of Mayo in revoking the charter of the old division was regular and lawful; and, second, that the title of the defendants was confirmed by the order of the circuit court of the 18th of February, 1884, appointing them trustees as set forth in that order.

It does not distinctly appear from the record what were the exact relations existing between the Grand Division and the original Springfield Division, Sons of Temperance, nor whether the action of Mayo was authorized by a two-thirds vote of the former division after notice to the latter, to whom, it would seem, the right of appeal to the National Division was reserved. But assuming that the voluntary relation of superior and inferior existed between them, and that the action of Mayo was pursuant to a previous and regular order of the Grand Division, still the proposition cannot be maintained that the effect of his action was to transfer the title to the property in controversy from those in whom it was at that time vested; for the Grand Division, a mere voluntary association, possesses no judicial powers, and can confer none on its officers. The creation of judicial tribunals is one of the functions of sovereign power, and an adjudication of such officers, as such, on the rights of property, is not good, as a judgment, nor, it seems, as an award. *Austin* v. *Searing*, 16 N. Y. 112; *Boxwell* v. *Affleck*, 79 Va. 402.

And it is equally clear that if Mayo and his associates were not authorized to act for the beneficiaries in the deed of January 12th, 1857, no title to the property conveyed by that deed

was acquired by the order of the circuit court, made on the 18th of February, 1884. The circuit court undoubtedly had jurisdiction under the statute, when properly invoked, to change the trustees, but the effect of its order could extend no further than to confer upon the new trustees the legal title to such property only as those whom they represented were entitled to.

As was said by this court in *Allen* v. *Paul,* 24 Gratt. 332, in respect to the appointment of trustees for certain church property, "the order of the circuit court appointing the defendants trustees was legal, and it was binding so far as it constituted them trustees. Nor could the regularity or validity of said order, or the appointment of the defendants as trustees thereunder, be inquired of in this suit; but the said order does not vest in them the legal title to the property in controversy for the time being, or for a single instant, unless the congregation which they represent are the owners of it. Only the legal title to the land *owned* by the congregation is vested in them by the terms of the order. The question, whether the property is owned by the said congregation is not touched by the order; consequently, it is not true that by reason of said order they cannot be disposed of as the property in controversy by this proceeding."

Now, inasmuch as it appears in the present case that only four of the members of the old division, as it is called, united in and endorsed the action of Mayo in revoking the charter of that division, and organizing a new division, and that a large majority of the members protested against his action, and have ever since treated it as arbitrary and invalid, it cannot be held that they were represented by him and his associates, or that their rights were in any way affected by the order of the circuit court of the 18th of February, 1884.

Nor are their rights any more affected by the order of the 25th of February of the same year; for if the first order was

invalid, so far as their property rights are concerned, their unsuccessful application to the court to revoke and annul it does not in the slightest degree alter the case. The order to have been valid, as a means of passing the title to the property in controversy, must have been made on the "application of the proper authorities" of the Springfield Division, or ·those representing the beneficiaries in the deed of January 12, 1857; and, as that was not the case, no rights to the property were either acquired or lost by reason of that order, or the subsequent action of the court in respect thereto, Code 1873, ch. 76, secs. " 9 and 14; *Wade* v. *Hancock·and Agee,* 76 Va. 620.

In the argument for the defendants, much stress was laid on the fact that after the defendants took possession of the premises in controversy, those whom the plaintiffs claim to represent met, and, ignoring the previous action of Mayo, changed the name of their division, calling it, in place of the old name, "Springfield Division, No. 167, *Independent* Sons of Temperance;" and this, it is contended, is decisive of the right of the plaintiffs to recover possession of the property which was conveyed for the benefit of the old division. But this position is not· well taken. The property was not conveyed upon condition that the beneficiaries in the deed should retain the then name of their division, or that they should associate themselves with, or become subject to, the orders and regulations of the Grand Division, or any other body; and, consequently, they were left free to change the name of their division whenever they might see fit to do so.

A similar question arose in the case of *Cahill* v. *Bigger,* 8 B. Monr. 211. There certain property was conveyed to trustees for the benefit of the "Particular Baptist Church" of the town of Washington, and it was held that a ·subsequent change in the *name* of the church did not affect the title of the beneficiaries to the property in dispute. Hence the fact, if it be a fact, that

the plaintiffs have never been appointed by any court trustees of "Springfield Division, No. 167, *Independent* Sons of Temperance," can make no difference, so far as the present case is concerned. The fact is, that they were in possession of the premises in controversy when possession thereof was taken by the defendants. And it follows from what has been said that the withholding of possession by the latter is unlawful, and that without regard to the plaintiffs' title or right of possession.

Something was also said in the argument as to a diversion of the trust property by the plaintiffs; but that question cannot be considered in this proceeding. If such be the fact, any person in interest feeling himself aggrieved thereby, may resort for redress to a court of chancery. This is not the proper time or place for such complaint. *Wade* v. *Hancock & Agee, supra.*

The views we have expressed were substantially embodied in the three instructions which, at the trial, the plaintiffs moved the hustings court to give to the jury, but which were refused. And the same questions were afterwards raised on the motion to set aside the verdict and for a new trial.

The judgment will, therefore, be reversed, and the case remanded for a new trial with directions to give to the jury on such new trial, if the evidence be the same, the instructions asked for by the plaintiffs, as they appear in the transcript of the record, if they shall again ask that they be given.

LACY, J., dissented.

JUDGMENT REVERSED.