# Pack et al. v. Feuchtenberger.

(Decided June 14, 1929.)

(As Modified, on Denial of Rehearing, January 24, 1930.)

H. F. PRICE for appellants.

WILSON & ROBINSON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellee instituted this proceeding of forcible detainer against the appellants in the Boyd county court. The latter were found guilty of the detainer in that court, and thereupon they traversed the finding and appealed to the Boyd circuit court. On the trial of the proceeding in that court before a jury, the court peremptorily instructed the jury to find the appellants guilty of the forcible detainer complained of, and after the jury had done so entered a judgment in accordance with the verdict. From that judgment, this appeal is prosecuted.

We are met at the threshold of this case by the appellee's motion to strike the bill of exceptions from the record. This case was tried at a special term of the Boyd circuit court held in June, 1928, and presided over

by Hon. Chas. D. Grubbs, a member of the bar, under designation of the Chief Justice. At this term the appellants were given until the last day of the regular September, 1928, term of the Boyd circuit court, that being the next regular term of that court after the special June term, to file their bill of exceptions. At the September term, and within the time allowed by this order, the appellants tendered their bill of exceptions. The order recites that the bill was tendered, but the plaintiff, now appellee, objected to its filing, and that thereupon the court permitted said bill of exceptions to be tendered. This September term was presided over by the regular judge. He did not sign or order filed the bill of exceptions at this September term, and neither did he do so at the November term which was the next regular term of the Boyd circuit court after the September term. The next regular term of the Boyd circuit court after the November term began in January, 1929. The regular judge of the Boyd circuit court was ill, and thereupon Hon. Sam Hurst, the regular judge of the Twenty-Third judicial circuit, was, as provided by the Statutes, designated as special judge to hold this January term in the absence of the regular judge. At this January term Judge Hurst signed and approved the bill of exceptions which had been tendered at the preceding September term and ordered the same filed. The order recites that the bill had been tendered at the September term, and that time had been taken for the consideration of the bill. It is insisted first that the order of the court regarding this bill of exceptions entered at the September term does not recite that the court was going to take time to consider the bill, that without such an order the court was without power to take time, and that, in the absence of such an order, the bill of exceptions not having been filed within the time allowed by the order entered at the June term, it was too late for the court to order it filed at the January term. We are of opinion, however, that, where the party to a suit tenders his bill of exceptions within the time allowed him by law, he has done all that he is required to do, and that, if the court takes time in the consideration of the bill, the party tendering the bill is not prejudiced because the court in the order reciting that the bill was tendered fails to also incorporate the fact that he is going to take time to consider the tendered bill. In the case of Toner's Adm'r v. South Covington & C. St. Ry. Co., 109 Ky. 41,

58 S. W. 439, 22 Ky. Law Rep. 564, we said: "The plaintiff, having tendered his bill of exceptions in time, should not be affected by the delay of the court in signing it."

But even if this be so, it is next insisted that Judge Hurst had no right as special judge to sign the bill of exceptions at the January term. Appellee argues that under Civil Code, sec. 334, only the regular judge or a special judge presiding over the next regular term after the term at which the case is tried has any power to sign a bill of exceptions. Without deciding whether a special judge appointed from the bar would have had the authority to sign the bill of exceptions as was done here, we are of opinion that Judge Hurst, a regular circuit judge, sitting as special judge pursuant to section 971-1 et seq. of the statutes, had such authority. Section 971-2 being part of chapter 31 of the Acts of 1926, provides for the designation of the regular circuit judges when available to act as special judges. That section in part reads: "It shall be the duty of the said circuit Judge . . . to hold the court or to try the case or cases and the circuit Judge so designated by the Chief Justice shall have all the power of the regular Judge of the court over which he is designated to preside."

Judge Hurst was designated to preside over the regular term of the Boyd circuit court; Judge Woods, the regular judge of that circuit, being ill. Under the express provisions of the statute, Judge Hurst had all the powers of Judge Woods, and as Judge Woods could have signed this bill of exceptions at the January term it follows that Judge Hurst had the like power.

Other objections are made to the bill of exceptions, but we are of opinion that it substantially conforms to the bill of exceptions, the validity of which we sustained in the case of Louisville & N. R. Co. v. Stewart's Adm'r, 207 Ky. 516, 269 S. W. 555. The motion to strike that bill of exceptions was overruled in that case, and for like reasons the motion to strike this bill of exceptions must be overruled. This brings us to a discussion of the merits of this case.

In November, 1926, the appellee orally leased to the appellants a storehouse he owned in Catlettsburg for an indefinite period with a monthly rental of $45 per month reserved. The appellee testified that he rented this building to the appellants "from month to month for $40 a month and allowed him (sic) $25 of his first

month's rent to make a little necessary repairs that had to be made."

The evidence satisfactorily establishes that the rent was due on the first of each month, and that the parties regarded the lease as having been begun on the 1st of December following the letting in November, 1926. On the 27th day of January, 1928, the appellee served notice on the appellants to "at once vacate the premises" which he had leased to them. This notice was served on the appellants on January 30, 1928. They did not move, and on March 10th following these forcible detainer proceedings were instituted, the detainer being laid as of March 2d. The whole defense of the appellants is based on the claim that they were entitled to a 30-day notice before their lease could be terminated, and that the notice served upon them was ineffectual for that purpose. Appellee insists that he had a right to terminate this lease at any time without notice.

A distinction must be made between a letting from month to month and a letting for the term of one month, sometimes called, in our opinions, a letting by the month. See J. W. Reccius & Bros. v. Columbia Finance & Trust Co., 120 Ky. 478, 86 S. W. 1113, 27 Ky. Law Rep. 880.

The latter is a letting for a fixed definite term, that is, for one month. Under the Statutes, sec. 2296, where a tenant has a lease for less than a year terminable on a certain day, it is his duty to surrender the premises on that day, and no notice is necessary in order for the landlord to recover possession of the premises. The reason for this is obvious, since the day of the termination of the lease is known by both the landlord and the tenant, and each can govern himself accordingly. Where, however, the lease is from month to month, a notice of the election to terminate the lease is necessary. Tiffany, Landlord and Tenant, sec. 14c; 35 C. J. 1116. The reason for this rule is equally obvious since a lease from month to month is a lease for an indeterminate period with monthly rental reserved. Tiffany, Landlord and Tenant, sec. 14c; 35 C. J. 1106. And in order that the parties to the lease may fairly govern themselves, it is necessary that each should have some notice when the other intends to bring the lease to an end. Therefore, where the lease is from month to month, a month's notice to terminate the lease is necessary. 35 C. J. 1116; Tiffany, Landlord and Tenant, secs. 14c, 196c. The case of J. W. Reccius & Bros. v. Columbia Finance & Trust

Co., supra, does not lay down a contrary rule as appellee contends. There, as the opinion says, the letting was by the month. ''The duration of the term was certain; that is, the term was for one month. The fact that a lease for a fixed period gives to the lessee an option of renewal will not affect its character as a lease for a fixed period.'' In that case the parties stipulated for a 30-day notice of the election of the landlord not to accept the tenant's exercise of his continuing option of renewal. But for this stipulation there would have been no necessity for such a notice. In the case of Berry v. Hale, 190 Ky. 510, 227 S. W. 793, also relied upon by the appellee, it is not clear whether the letting was by the month or from month to month, but a 30-day notice was given in that case. The real issue there was not whether the letting was by the month or from month to month, but whether it was either of these or by the year. Neither of these cases supports the appellee in his position that under a lease from month to month no notice of the election to terminate is necessary. As we have seen, the law is settled adverse to his contention. A notice of his election to terminate the lease being necessary on the part of the appellee, was the notice he gave in this case sufficient?

The notice was to the effect that the appellant should vacate the premises at once. This notice was insufficient, and valid for no purpose. In the case of Reeder G. Klette v. Maria Bell, 7 Bush, 255, the landlord, under the facts, was not entitled to have the tenant vacate the premises before April 1st. Some time before March 1st, he gave the tenant notice to quit on that date. It was held that the notice to quit on March 1st would not support an eviction on April 1st. We said:

"The term ended on the 1st of April; she was therefore not bound to quit on the 1st of March. And a special notice to quit on the 1st of March was not equivalent to a general notice to quit, which would have implied a demand of restitution at the end of the term, or to a special notice to quit at that time; for a notice that the appellants would be ready to receive the possession on the 1st of March, and would expect it then, was no certain notification that they would be ready on the 1st of April, and would then expect it. The appellee was therefore not certainly notified that she must surrender on the first of April.

See, also, Haley v. Hickman's Heirs, Litt. Sel. Cas. 266.

In the instant case, the appellants were notified to vacate the premises "at once," which was equivalent to notifying them to vacate on receipt of the notice, and that was on January 30th. Under the Bell case, supra, such a notice to quit was not equivalent to a general notice to quit, for it just as definitely stated the time when appellants should vacate the property as if the date January 30th had been inserted. Hence the notice does not support an eviction as of March 1st.

In Jones on Landlord and Tenant, sec. 251, it is said:

"That the notice must point to the time for the tenants to quit is a general requirement based on obvious ground of convenience and justice. In holding that a demand for present possession would not operate as a notice to quit at a future day it was said, after an enumeration of the essential parts of a notice: 'It is, however, unnecessary to say more here than that a simple demand of present possession, which is all that the testimony shows, is not a notice to quit after the expiration of 30 days. Without an antecedent notice, the landlord here was not entitled to possession, and it must be plain that a demand for a possession to which he is not entitled amounts to nothing, certainly not to a notice to quit at a future time.' . . . And it has been held that notice by a tenant that he surrenders possession on the day on which the notice is given would not terminate the tenancy on the expiration of one month from that date, even though one month's notice only is required to terminate such a tenancy. In explanation of this requirement, the Massachusetts court said: 'The notice to quit is technical, and is well understood; it fixes a time at which the tenant is bound to quit, and the landlord has a right to enter, and a time at which the rent terminates. The rights of both parties are fixed by it, and are dependent on it. Should the landlord decline to enter, and the tenant quit according to the notice, the tenant could be no longer holden for rent, although he had given no notice to the landlord. The lease is "determined" by such notice, properly given, by either party. It is manifest, therefore, that when such

consequences depend upon the notice to be given, the notice should fix, with reasonable exactness, the time at which these consequences may begin to take effect.' "

To the same effect is 16 R. C. L. 1174, 35 C. J. 1117, and Tiffany on Landlord and Tenant, sec. 200. In this last-named authority, it is said:

"Not only is a notice expressed to expire on a wrong day insufficient, but so is a notice not naming any day, and therefore constituting in effect a mere demand for immediate possession by the landlord, or, if given by the tenant, an offer of immediate possession."

The cases of J. W. Reccius & Bro. v. Columbia Finance & Trust Co., 120 Ky. 478, 86 S. W. 1113, 1114, 27 Ky. Law Rep. 880, and Reck & Riehl v. Caulfield, 129 Ky. 695, 112 S. W. 843, 844, are not in conflict with these views. In the Reccius case, the opinion says:

"The court's instruction to the jury, therefore, that they should find the defendant guilty of the forcible detainer, if they should believe from the evidence that the plaintiff, the landlord, gave the defendant 30 days' notice to quit previous to the terminal day claimed by plaintiff, to wit, April 10, 1903, was right."

An examination of the original record in that case discloses that the claimed notice to quit was given on February 21st and the tenant was told to vacate on April 10th, the tenth of the month being the beginning of the monthly periods of the lease. Of course, if the facts were as claimed, the notice was sufficient, for it specified a proper day more than 30 days after the notice was given. In the Caulfield case, the only question before the court was whether the tenant was guilty of forcible detainer on the 16th day of May, because of a notice given on April 15th that the landlord, under a lease by the month, where the periods began on the 7th of each month, demanded possession 30 days after the giving of the notice, and it was held that the tenant was not guilty. It is true the court by way of dictum did say that the "tenant would not have been guilty of forcible detainer until June 7th," and that the landlord "could not require" the tenant "to remove before the next rental

day, which, as said before, was June 7, 1907;" but this question was not before the court, and even the dictum does not say that the landlord could remove the tenant then, except by inference. The headnote quoted from Davis v. Hall, 6 Ky. Law Rep. 444, is from a superior court case. The opinion is not printed, but, reading all the headnotes, it is obvious that the Hall case is exactly like the Caulfield case, and that the quoted headnote is but dictum, and no authority contrary to the rule hereinbefore elaborated.

The notice being invalid, the appellants were entitled to retain the possession of the demised premises until a proper notice of the election of the appellee to terminate the lease was served upon them. This being true, the appellants were not guilty of the forcible detainer complained of, and the court should have peremptorily instructed the jury to find for the appellants instead of the appellee as it did.

The judgment is therefore reversed for a new trial consistent with this opinion.

Whole court sitting.