## BURFORD v. KRAUSE.

### Civ. No. 1232–48.

United States District Court
District of Columbia.

March 29, 1950.

————o————

Reuben Bonnett, Washington, D. C., for plaintiff.

Arthur L. Willcher, Washington, D. C., for defendant.

KIRKLAND, District Judge.

Plaintiff sought in a complaint predicated on an unlawful eviction to recover compensatory and punitive damages, growing out of an incident where the defendant landlord had re-entered his premises, used for commercial purposes, located at 4803 Georgia Avenue, N. W., after expiration of a lease and with prior written notice of his intention so to do, as well as affording the plaintiff tenant several extensions, apparently to permit him time to remove his effects from the premises. There is no averment in the complaint of unlawful coversion or of unfair trade practice, but the gravamen of the complaint is predicated upon the averment that the tenant was unlawfully evicted and that he suffered damage to his credit reputation, humiliation among his business associates, and loss of income among his customers and trade.

The evidence shows that a lease was entered into for one year beginning December 13, 1943, at a monthly rental of $135 for the use of the premises as a retail dry cleaning establishment, with an over-head apartment and garage, with an option to the plaintiff lessee to renew the lease for a period of three years, and with rental increase in the latter period to $150 per month. There was also a convenant that the lessee would agree to deliver the premises in the same order in which they were received, usual wear and tear, fire and storm excepted. The evidence further showed that the plaintiff exercised his option of renewal and sought to have a new lease drawn at an increased rental, but that the defendant landlord declined, and

despite several instances when the same proposition was renewed, the landlord still declined. Although not required so to do, the landlord sent a written notice dated June 24, 1947, to the tenant advising that he desired the premises when the lease expired. The plaintiff took active steps to dispose of the machinery within the premises through sales in the latter part of the Summer of 1947, and ceased to do any active business in the store after September 1947. He thereafter secured a new business site at premises 4833 Georgia Avenue, N. W., and also displayed a card notice advising of his moving to the new location. When rent was tendered for the period of December 13 to January 13 the same was refused by the landlord, and two extensions apparently to permit the plaintiff to move what other effects were on the premises were granted for the period over the Christmas holidays as well as into the first part of January 1948. Thereafter, on January 14, the landlord appeared at the premises and after a lock was broken on the front door proceeded to remove a number of bundles and packages to a warehouse where they were stored in the name of the defendant landlord, who afterwards paid the sum of $67.92, while the plaintiff paid $20, for their release six months after the occurrence. At the time of removing these effects from the premises, the tenant, who was operating a number of retail dry cleaning stores and had approximately nine trucks, used one of the trucks to remove personal effects to his own private storage.

The plaintiff testified that he intended to stay as long as he could and had no definite idea of moving, and testified in a deposition taken shortly after suit was filed that he desired to remain in the hope that the landlord would change his position and execute a new lease.

■ To successfully maintain a suit under the theory of this complaint, the plaintiff must show an injury to a legal right and that damages flowed as a result. Taking these matters in their inverse order, the Court finds as a fact that there was no showing of any damages. The plaintiff was unable to point to a single loss of a customer or credit standing, and testified merely to the fact that he was personally embarrassed under the mistaken apprehension that others might think he was being unlawfully evicted for failure to pay rent. Such proof does not amount to a showing of legal damages compensable under the law, nor is he entitled to punitive damages. Huber v. Teuber, 10 D.C. 484, 3 MacArthur 484, 36 Am.Rep. 110; Minick v. Associates Inv. Co., et al., 71 App.D.C. 367, 110 F.2d 267.

With regard to the complaint of unlawful eviction, despite the diligence of counsel, no case has been cited in the District of Columbia which is clearly in point. At common law the landlord could use any force necessary to expel the tenant holding over after expiration of a lease, but this has been qualified to prevent physical violence, force and breach of the peace. The statute in force in the District of Columbia is declaratory of the development of the common law rule, but it allows an independent method of recovery of possession rather than completely abolishing the common law right of using necessary force or at least effecting a peaceful re-entry. If there is no more force used than is implied in every trespass, with nothing to excite fear of personal violence, a case is not within the statute, and therefore the forcing open of the outer door in a peaceable manner is not of itself sufficient to constitute a forcible entry.

The development of the law under the forcible entry and detainer statutes indicates that even today one entitled to immediate possession may take that possession by a peaceful re-entry. Any acts which would amount to a breach of the peace are punishable criminally. The present rule in England is that a peaceful re-entry does not subject the landlord to civil liability. 22 Am.Jur., p. 915.

In the case of Hollidge v. Moriarity, 17 App.D.C. 520, the facts indicated that the defendant had gained possession of premises to which he was entitled by virtue of a void judgment, and more than a year later the former tenant sought to be reinstated in her possession. The Court ruled as follows: "The lease had thereby ceased and

determined; the lessor was entitled to the possession of her property. The legal proceeding instituted was entirely unnecessary. There being no actual impediment to her peaceful re-entry, neither judicial declaration of the termination of the lease, nor official induction into possession was required."

▪ The presence of the local forcible entry and detainer statutes does not supplant the common law right of self help in peaceably entering into premises on which a lease has expired where such entry is accomplished without breach of the peace. They merely afford additional means to which the parties may resort and under some circumstances may prove more orderly and less costly than the method employed in the case herein.

In the neighboring state of Maryland the law seems to be in accord with the case of Manning v. Brown, et al., 1877, 47 Md. 506, 507, wherein a suit containing two counts, one in trover alleging defendants had converted to their own use and wrongfully deprived plaintiff of use and possession of his goods, and the second in trespass for breaking and entering the dwelling house of the plaintiff and their seizing and carrying away his goods and chattels, the Court found that there was no evidence on the part of defendants either to take to themselves the property in the goods or in any manner to deprive the plaintiff of them. The Court recognized that the real question in the case arose under the count for trespass and disposed of that matter by saying: "At the common law, and prior to the old statutes to restrain forcible entries, wherever a right of entry existed, the party entitled to such right might lawfully enter, oust the disseisor, and regain the possession by force, if force was necessary for that purpose. * * * In such case as the present, he could have no claim to be restored to the possession of the premises; nor could he, with any show of justice, make claim to damages, as against the rightful owner, for being turned out of possession which he held by wrong. Whatever diversity of opinion upon this subject may have formerly existed, the law, both in England and this country, would

seem now perfectly well settled to be, as stated by Mr. Washburn, in his work on Real Property, Vol. 1, 538 (3rd Ed.) that if the owner of land wrongfully held by another enter and expel the occupant, but makes use of no more force than is reasonably necessary to accomplish this, he will not be liable to an action of trespass quare clausum, nor for assault and battery, nor for injury to the occupant's goods, although, in order to effect such expulsion and removal, it becomes necessary to use so much force and violence as to subject him to indictment at common law for a breach of the peace, or under the statute for making a forcible entry. (Citing cases.)"

While courts in the District of Columbia look for guidance to those opinions from the State of Maryland out of which the District of Columbia was carved, and from which even as a Federal jurisdiction it had inherited the common law as it existed down to the cession of 1800, the opinions in the neighboring Commonwealth of Virginia are also persuasive. In the case of Shorter v. Shelton, 183 Va. 819, 33 S.E.2d 643, 646, the facts indicated that the plaintiff was a resident of a hotel under terms which the Court held created a tenancy at will. The defendant hotel keeper entered the room and by use of some force dispossessed plaintiff and her belongings. In an action for damages for embarrassment, humiliation and nervous shock, the jury found a verdict for the defendant which was affirmed on appeal. The Court used the following language:

"At common law a landlord, entitled to possession of the leased premises which were being wrongfully withheld from him, had the right [to] make re-entry by such reasonable force as was necessary, short of that which threatened death or serious bodily harm, to regain possession. (Citing cases).

"But the plaintiff contends that this common-law right of the landlord has been superseded by the unlawful detainer statutes (Code, § 5445ff.) which give the landlord a summary remedy for recovering possession of premises unlawfully withheld. Hence, she says, the defendant should have pursued this statutory remedy and recov-

ered possession of the room by judicial process and not by force.

"Code § 5445 (as amended by Acts 1932, ch. 60, p. 53, Acts 1940, ch. 193, p. 295) provides that, 'If any forcible or unlawful entry be made upon lands, or if, when the entry is lawful and peaceable, the tenant shall detain the possession of land after his right has expired, without the consent of him who is entitled to the possession, the party so turned out of possession, no matter what right or title he had thereto, or the party against whom such possession is unlawfully detained may, within three years only after such forcible or unlawful entry, or such unlawful detainer, sue out' in the appropriate clerk's office 'a summons against the defendant to answer the complaint of the plaintiff that the defendant is in possession and unlawfully withholds from the plaintiff the premises in question.'

\*    \*    \*    \*    \*    \*

"It will be observed that the statute does not in express terms deprive the owner of the common-law right to take possession by reasonable force of premises to which he may be entitled. While its purpose is to prevent violence and disturbances which are likely to follow when one entitled to the lawful possession of premises undertakes to assert his rights by force (Southern R. Co. v. Lima Wood, & Coal Co., 156 Va. 829, 833, 159 S.E. 69), the right of action is civil in character (Kincheloe v. Tracewells, 11 Grat. 587, 598), 52 Va. 587, and the result, if the plaintiff prevails, is merely to restore the possession to one from whom it has been forcibly taken, or to give possession to one from whom it is being unlawfully withheld. 'The judgment has only the effect of placing the parties in statu quo.' (Citing cases.)

"In Gower v. Waters, 125 Me. 223, 132 A. 550, 552, 45 A.L.R. 309, it was held that the civil remedy afforded by the statutes of forcible entry and detainer did not deprive the landlord of his common-law right of entry.

"Consequently, as is said in Burks Pleading and Practice, 3d Ed., § 105, p. 208, 'The real owner, having a right of entry, will not commit a trespass by entering, though with force, unless he also commit a breach of the peace, but he may be turned out in an action of forcible entry.' See also, Davis v. Mayo, supra (82 Va. 97, at page 99).

"Moreover, the Virginia statute does not undertake to give a party forcibly dispossessed any right to institute a separate and independent action for damages therefor."

There being no showing of damages, and the complaint being insufficient under its allegations and as amended by the proof and testimony offered in plaintiff's case in chief, the Court accordingly directs a verdict in favor of the defendant.