## HUNDLEY v. MILNER HOTEL MANAGEMENT CO., Inc. et al.

### Civ. No. 661.

United States District Court
W. D. Kentucky, at Paducah.
July 21, 1953.

Jennings Kearby and Andrew J. Palmer, Paducah, Ky., Jos. E. Grace, Paducah, Ky., for plaintiff.

Francis T. Goheen, Goheen, Schultz & Shelbourne, Paducah, Ky., for defendants.

SHELBOURNE, Chief Judge.

The plaintiff, Mrs. Gertrude Hundley, sued Milner Hotels and C. F. Madden for false imprisonment and wrongful eviction. The jury returned a verdict in her favor and assessed damages as $1,754.

Defendant Milner Hotels was awarded $75 on its counterclaim for rent and storage charges.

Defendants move for judgment notwithstanding the verdict or, in the alternative, for a new trial on the following grounds

1. There was no wrongful eviction.

2. There was no substantial evidence that Madden (the hotel manager) imprisoned Mrs. Hundley.

3. The verdict was excessive.

4. A verdict against Milner for wrongful imprisonment cannot be sustained because Madden had no authority to lock in Mrs. Hundley.

The other grounds for relief mentioned in the motion for judgment, or, in the alternative, for a new trial should be regarded as waived.

The above grounds will be considered in the order listed.

### Questions Presented

There was no wrongful eviction.

■ This contention seems to be without merit, although the Court may have erred in charging the jury that a forcible detainer action is a requisite to a legal eviction. See Burford v. Krause, D.C.D.C., 89 F. Supp. 818, where the Court said there may be a right of reentry without a lawsuit.

However, the error, if there was one, is immaterial, in view of the fact that Milner in fact had no right of reentry with or without legal action.

A. The character of Mrs. Hundley's occupancy

Was Mrs. Hundley a tenant or a guest?

These facts support a finding that she was a tenant:

1. Her rooms were not furnished by Milner but by herself.

2. Milner did not furnish maid service.

3. She used her rooms for housekeeping; could and did prepare meals in them.

4. She was not a transient.

5. On occasion she did minor decorating and repairing.

6. She paid for her accommodations monthly.

These facts support a finding that she was a guest:

1. Her quarters were in the Earle Hotel, where all the rooms except one other set were occupied by transients.

2. The hotel kept a key to her premises.

3. The hotel made some repairs in the premises.

4. Mrs. Hundley had access to her rooms through a public hall and the lobby of the hotel.

5. Milner supplied electricity, water, and heat.

Both parties have cited numerous authorities for their respective contentions, but Kentucky law governs, and the parties have not cited convincing Kentucky authority.

The Court of Appeals has spoken of "the almost indistinguishable line separating the relationship of innkeeper and guest from that of landlord and boarder." Goodyear T. & R. Company v. Altamont Springs Hotel Company, 206 Ky. 494, 497, 267 S.W. 555, 556.

The general distinction between tenant and guest is stated as follows in 32 C.J. Innkeepers, § 3, pp. 529–530.

"In legal contemplation, neither an apartment hotel nor a lodging house, nor a boarding house is an inn, even though a register is kept and the word 'hotel' appears on its stationery. The distinction between a hotel or inn and a boarding house or lodging house is that the former is for the accommodation of all persons who choose to come and who are in a condition fit to be received, without any prior or express agreement as to duration of their stay, while the latter is for the accommodation of such persons as the proprietor chooses to receive under an express contract, for a certain period of time and at a certain rate. *There is nothing inconsistent or unusual, however, in a house of public entertainment having a double character, being simultaneously a boarding house and an inn.* With respect to those who occupy rooms and are entertained on a special contract, it may be a boarding house; and in respect to transient persons, who without a stipulated contract remain from day to day, it is an inn. * * * (Emphasis supplied.) See also, 43 C.J.S., Innkeepers, § 1.

Under this statement of the general law, Mrs. Hundley may or may not have been a tenant, but she was not a guest. The relationship of innkeeper and guest did not exist between Milner and her. This means that Milner did not possess, as to Mrs. Hundley, the summary remedies which ancient common law and present day statutes give an innkeeper.

B. What was the nature of Mrs. Hundley's occupancy?

She had lived in the hotel for a number of years but had no written contract with Milner. During the time preceding April 15, 1952, she had occupied her premises under an oral agreement whereby she paid $25 per month in advance on or before the fifteenth of each month. This arrangement constituted her a tenant from month to month. Pack v. Feuchtenberger, 232 Ky. 267, 270, 22 S.W.2d 914, 916.

"A distinction must be made between a letting from month to month and a letting for the term of one month, sometimes called, in our opinions, a letting by the month." J. W. Reccius & Bros. v. Columbia Finance & Trust Company, 120 Ky. 478, 86 S.W. 1113, 27 Ky.Law Rep. 880.

"The latter is a letting for a fixed definite term, that is for one month. Under the statutes, Sec. 2296, where a tenant has a lease for less than a year terminable on a certain day, it is his

duty to surrender the premises on that day, and no notice is necessary in order for the landlord to recover possession of the premises. The reason for this is obvious, since the day of the termination is known both by the landlord and the tenant and each can govern himself accordingly. Where, however, the case is from month to month, a notice of the election to terminate the lease is necessary."

Tiffany, Landlord and Tenant, Sec. 14c; 35 C.J. 1116, 51 C.J.S., Landlord & Tenant, § 150. The reason for this rule is equally obvious since a lease from month to month is a lease for an indeterminate period with monthly rental reserved. Tiffany, Landlord and Tenant, Sec. 14C; 35 C.J. 1106, 51 C.J.S, Landlord and Tenant, § 146. And in order that the parties to the lease may fairly govern themselves, it is necessary that each should have some notice when the other intends to bring the lease to an end. Therefore, when the lease is from month to month, a month's notice to terminate the lease is necessary. 35 C.J. 1116; 51 C.J.S., Landlord and Tenant, § 150. Tiffany, Landlord & Tenant, Secs. 14C, 196C.

The notice in writing which Milner sent Mrs. Hundley on March 6, 1952, was not a notice to quit; it was a notice that Milner intended to raise her rent to $50 per month beginning April 15, 1952. It created an obligation in Mrs. Hundley to give a thirty-day notice to quit Milner if she intended not to continue her tenancy at the increased rent. Her failure to give notice and her continuation in possession created an obligation in her to pay rent at $50 per month after April 15, 1952, and the Court so instructed the jury.

However, since the tenancy had not ended on April 15, 1952, Milner had no right of reentry on that date, but only a right to recover rent owing and unpaid. It is fundamental that a failure to pay rent does not, ipso facto, give the landlord a right of reentry. 36 C.J. Landlord and Tenant, Sec. 1758, page 599; 52 C.J.S., Landlord and Tenant, § 718b.

It follows that the eviction on April 16, 1952, was unlawful and entitled Mrs. Hundley to damages, against which should be set off her obligation to pay rent at $50 per month, less an abatement to the extent Milner denied her possession.

There was no substantial evidence that Madden (the hotel manager) imprisoned Mrs. Hundley.

This contention seems to me to be entirely without merit.

Defendants cite numerous authorities for the undeniable proposition that the jury must not be permitted to speculate about the cause of injury or damages. Such authorities are not in point because there was in fact substantial evidence from which the jury could reasonably conclude that Madden had caused Mrs. Hundley to be imprisoned.

Madden testified on direct examination that he had hasps installed on Mrs. Hundley's doors, and on cross examination that it was possible to lock the door which Mrs. Hundley normally used *without putting a lock through the staple.*

The jury could reasonably infer an imprisonment from the circumstances that Madden had placed a hasp on the door capable of locking it without a lock.

The amount of time during which Mrs. Hundley was unable to open her door is not significant on the question of whether there was an imprisonment. "Any deprivation of the liberty of plaintiff by defendant, or any detention of him for however short a time by defendant without the plaintiff's consent and against his will, whether it was by actual violence, threats or otherwise, constitutes an arrest." Great A. & P. Tea Company v. Smith, 281 Ky. 583, 598, 136 S.W.2d 759, 767.

The verdict was excessive

This contention seems to be entirely without merit. Defendants' objection to the Court's instructing the jury that humiliation suffered by Mrs. Hundley was a proper element of damages is not supported by authority. The basis of defendants' contention is that Mrs. Hundley could not

210

have suffered humiliation during her imprisonment because no one except her knew she was imprisoned. In other words, defendants contend that publicity or notoriety of the shameful event is a necessary element of humiliation. No authority to that effect is cited. On the other hand, it is clearly the law that humiliation is a proper element of damages in a false imprisonment case. Ross v. Kohler, 163 Ky. 583, 594, 595, 174 S.W. 36, 41 L.R.A.1915D, 621:

> "In an action for false arrest and imprisonment, the injury to the feelings and mental sufferings, arising from the mortification, shame, fear, and humiliation suffered by the arrested party from the circumstances of the arrest and detention, are proper elements for damages to be considered by the jury, as well as the physical inconveniences suffered."

■ Counsel for defendants in brief suggests that he may have "inserted elements into the case causing the jury to render a decision based on passion and prejudice", when he disclosed the love letters. Such disclosure at the time involved the risk that the jury might be inflamed, but Counsel deliberately introduced the letters and cannot be heard to complain of their effect.

■ Moreover, the Court cannot find as a matter of law that the verdict is flagrantly excessive. Plaintiff proved special damages of $278. The jury awarded less than $1,500. for compensatory damages. That sum is not *ipso facto* excessive.

*A verdict against Milner for wrongful imprisonment cannot be sustained because Madden had no authority to lock in Mrs. Hundley.*

■ Defendant Milner relies upon the proposition that "the rule of respondeat superior cannot be invoked and the employer be held liable where the action of the employee was motivated by conceptions of personal wrong or the invasion of his private rights." Newberry Company v. Judd, 259 Ky. 309, 316, 82 S.W.2d 359, 362.

That proposition is not applicable to the case at bar because there is no evidence that Madden's actions were motivated solely by conceptions of personal wrong or the invasion of his private rights. The love letters which defendants introduced tended to establish a motivation not alone in Madden, but also in Milner to seek Mrs. Hundley's eviction. Madden seems from the evidence, to have wanted, to evict Mrs. Hundley, but the proof indicates as well that Milner wanted him to evict her. Admittedly, the rent was increased in hope that Mrs. Hundley would leave.

These facts are undisputed:

1. Madden was the manager of the hotel.

2. Milner had authorized doubling the rent.

3. Madden ordered the house man to put hasps and staples on Mrs. Hundley's doors and supervised the work.

4. The steps taken to assure that Mrs. Hundley could be locked out were in the interest of recovering possession of her rooms by Milner.

These facts being true, the applicable rule of law taken from the Newberry Company case, supra, is as follows, 259 Ky. at page 316, 82 S.W.2d at page 362.

> "Where the employee was intrusted with the care and custody of his employer's business and property and his act or arrest or detention or its procurement arose out of his effort and purpose to protect or recover the same * * * the principal is held liable. Although he was incited by excessive zeal, or used poor judgment, or did an unexpected thing, the implication is that it was done in the exercise of a discretion and judgment as a means and for the purpose of performing his duty. This implication is imposed upon the principal if the nature of his duty and other circumstances make it a reasonable conclusion that it was within the scope of authority and furtherance of the principal's business and interest on the occasion. * * *"

And 259 Ky. at page 317, 82 S.W.2d at page 363:

"The character of employment is an important consideration attending the inclusion or exclusion of the particular agent's misconduct as within or without his implied authority. The designation of manager *. * * carries the implication of general power * * *."

As was pointed out above, it was a reasonable inference that the hasp and staple were placed on the door of Mrs. Hundley's room in such a way as to have caused her to be unable to open it from inside. Madden had the hasp and staple placed there, and he did it, by his own admission, which Milner never denied, to advance Milner's purpose to oust Mrs. Hundley from the hotel. Milner should be answerable for the act of Madden under the circumstances.

Wood v. Southeastern Greyhound Lines, 302 Ky. 110, 194 S.W.2d 81, cited by Milner, is distinguishable from the instant case on its facts. There a bus driver, who became angry with a motorist, stopped his bus and assaulted him. The Court found that the bus driver was not on his employer's business because (a) the act of striking the motorist did not further the employer's business, (b) there was a deviation from the routine of the employment, and (c) there was a dissimilarity between the tortious act and the usual activity of employment.

Here it was within the scope of the manager's authority to see that an occupant of the hotel paid her bill. The acts which took place were reasonably connected with an exercise of that authority.

Louisville & Nashville Railroad Company v. Vinson, 310 Ky. 854, 223 S.W.2d 89, cited by Milner, is distinguishable because there the Court of Appeals could find no evidence that the agent who committed the act of false imprisonment "was actuated by a sense of duty to the railroad company." 310 Ky. at page 860, 223 S.W.2d at page 92.

### Conclusion

Defendants' motion for judgment, or, in the alternative, for a new trial should be overruled.