# Richmond

MATTIE M. SHORTER V. D. R. SHELTON.

April 23, 1945.

Record No. 2893.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*Allen & Allen,* for the plaintiff in error.

*J. Segar Gravatt* and *H. H. Watson,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Mrs. Mattie M. Shorter filed her notice of motion for judgment in the court below against D. R. Shelton, alleging, in substance, that while she "occupied and resided in room number 29 in the Crewe Hotel, Crewe, Virginia, under a lease, contract, agreement or understanding with the defendant", who was the operator of the hotel, he (the defendant) wrongfully evicted her by force and violence from the room, as the result of which she was embarrassed and humiliated, and her nervous system was shocked and injured. She claimed damages of the defendant for the alleged acts. There was a trial by a jury which resulted in a verdict for the defendant upon which the lower court entered judgment. To review this judgment the present writ has been allowed. For convenience the parties will be referred to as they appeared in the court below.

The plaintiff contends before us, as she did in the court below, that she occupied the room as a monthly tenant, and that since she had not been given the thirty days' notice in writing required by Code, section 5516, the defendant was not entitled to possession of the room.

The defendant contends that Mrs. Shorter was merely a tenant at will of the room which entitled him to possession of it at any time without notice. This view the lower court sustained and so instructed the jury.

In his brief before us the defendant also contends that the relation of landlord and tenant does not exist between the operator of a hotel and a guest therein, and that under well-recognized principles applicable to innkeepers, he had the right to require the plaintiff to move from room number

29, occupied by her, to any other room of like character in the building which he might select for her. However, no such defense was asserted in the court below and the case was tried upon the theory that the relation of landlord and tenant existed between the parties. Hence, we shall deal with it upon the assumption that such relation existed.

The plaintiff and her husband built the Hotel Crewe in 1929, and occupied as their residence therein rooms numbers 29 and 24 until the husband's death in 1939. After her husband's death the plaintiff continued to occupy room number 29. On October 23, 1942, she entered into a written agreement whereby she leased the hotel to the defendant, D. R. Shelton, and Mrs. Julia B. Madison, for a period of five years beginning November 5, 1942. On November 14, 1942, Mrs. Madison assigned her interest in the lease to D. R. Shelton who thereafter became the sole operator of the hotel.

On November 6, 1942, when Shelton and Mrs. Madison took over the operation of the hotel, Mrs. Shorter moved into room number 24, for which she paid the sum of $25 per month. On December 6 she returned to room number 29 which she occupied until the date of her eviction on July 19, 1943. For this latter room she paid the sum of $30 per month on the sixth day of each month, the last payment being on July 6, 1943.

There was no written contract between the parties as to the terms under which Mrs. Shorter occupied these rooms, and her oral testimony with respect to the agreement is vague and indefinite. Her first contention was that at the time she entered into the written lease with Shelton and Mrs. Madison, it was verbally agreed that she might retain a room in the hotel as her residence. This claim was so patently in violation of the parol evidence rule that it was abandoned by her counsel.

She next said that after the execution of the written lease both Shelton and Mrs. Madison agreed that she might occupy room number 24 for $25 per month and room number 29 at $30 per month. On direct examination she made no

statement as to the duration of the term. When pressed as to this, on cross-examination, she stated that Shelton agreed, to use her own words, "that I could stay there as long as I wanted to."

Shelton, the defendant, testified that when he took over the operation of the hotel, Mrs. Shorter requested that she be allowed to occupy room number 29 until she could adjust some of her personal affairs; that she first suggested thirty days; that she requested an extension until January 1, and later until March 15, 1943, to each of which extensions he agreed; and that while he told her that he did not care to charge her for the occupancy of the room, she insisted that she pay the sum of $30 per month, which he accepted.

On March 1, 1943, Shelton wrote Mrs. Shorter demanding possession of the room on March 15, in accordance with this agreement. She paid no attention to this notice, and on March 18 he wrote her requesting that she vacate the room by April 1. When Mrs. Shorter paid no attention to the last notice Shelton consulted the Area Rent Office of the Office of Price Administration at Petersburg, and was assured that no regulations of that office stood in the way of his procuring possession of the room. On March 26 he again wrote Mrs. Shorter demanding possession of the room on April 1, and advising her that such notice was in accordance with the "Rent Control Regulations."

This last notice Mrs. Shorter referred to her counsel who wrote Shelton that "we expect to contest your effort to make Mrs. Shorter move." There was no suggestion in this letter that Mrs. Shorter contended, or would contend, that she was a tenant from month to month.

No further notice was given and Mrs. Shorter continued to make, and Shelton continued to accept, the monthly payment of $30 for the room, the last of which was made on July 6.

On July 19 the defendant, under circumstances which will be hereafter related, over Mrs. Shorter's protest, took possession of room number 29 and moved her belongings into room number 24, across the hall.

Under the principles established by this court in *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652, and restated in subsequent cases, Mrs. Shorter's rights must stand or fall on her own account of the verbal understanding between her and the defendant. Under her version of the arrangement, as has been said, it was agreed that she should occupy the room as long as she wanted to. In the recent case of *Eason* v. *Rose, ante,* pp. 359, 364, 365, 32 S. E. (2d) 66, 68, 69, we held that where no term is mentioned, and the estate is expressly declared to be at the will of one of the parties, nothing being said as to its binding effect on the other, it is an estate at the will of both parties, and either may terminate it at his option. That conclusion is amply supported by the authorities cited which need not be repeated here.

While the defendant's version of the understanding between him and Mrs. Shorter is somewhat different from hers, there is nothing in it to indicate that a monthly tenancy was created. As was said in *Eason* v. *Rose, supra (ante,* p. 359, at page 365, 32 S. E. (2d) 66, at page 69), "In an estate at will expressly created, where rent is to be paid by the tenant, the tenant is liable for rent in accordance with the intent and agreement of the parties. The payment of such rent does not alter the agreement as to the character of the tenancy."

In our opinion the trial court was right in holding that Mrs. Shorter occupied the room merely as a tenant at will, which tenancy the defendant had the right to terminate at his pleasure. *Eason* v. *Rose, supra.*

The next contention of the plaintiff is that even though the defendant was entitled to possession of the room, the court erred in instructing the jury that he had the right to take possession thereof, using only such force as was reasonably necessary in order to evict her. In this connection it should be pointed out that the court qualified this instruction by telling the jury that if they "believe from the evidence that in taking possession of said room the defendant Shelton employed more force than was reasonably necessary,

or subjected the plaintiff, Mrs. Shorter, to unnecessary indignities, he exceeded his rights in the premises and is liable to the plaintiff".

Counsel for the plaintiff concedes that "the verdict of the jury is conclusive that he (the defendant) did not use more force than was reasonably necessary" to evict the plaintiff, but insists that the defendant had no right to use any force whatever to accomplish that purpose.

According to the plaintiff, about noon on July 19, 1943, the defendant, accompanied by three of his employees, knocked at her door. She opened the door slightly, whereupon the defendant placed his foot in the opening and forced his way into the room despite her protestations and physical resistance. The defendant's servants, under his direction, then transferred the plaintiff's effects from room number 29 to room number 24. She further testified that she was bruised and shocked in resisting the defendant's entrance into the room.

The testimony of the defendant and that of his servants is that after Mrs. Shorter had opened the door, in response to his knock, he placed his foot in the opening to prevent her closing the door, and that she offered no physical resistance to his entrance into the room, although she did vigorously protest against the removal of her belongings. The verdict plainly indicates that the jury has accepted the defendant's rather than the plaintiff's version of the incident.

At common law a landlord, entitled to possession of the leased premises which were being wrongfully withheld from him, had the right to make re-entry by such reasonable force as was necessary, short of that which threatened death or serious bodily harm, to regain possession. *Allen* v. *Gibson*, 4 Rand. (25 Va.) 468, 471; Restatement of the Law of Torts, Vol. 1, section 87, pp. 204-5; 32 Am. Jur., Landlord and Tenant, section 1010, p. 847.

But the plaintiff contends that this common-law right of the landlord has been superseded by the unlawful detainer statutes (Code, section 5445 *ff.*) which give the landlord a summary remedy for recovering possession of premises un-

lawfully withheld. Hence, she says, the defendant should have pursued this statutory remedy and recovered possession of the room by judicial process and not by force.

Code, section 5445 (as amended by Acts 1932, ch. 60, p. 53, Acts 1940, ch. 193, p. 295), provides that, "If any forcible or unlawful entry be made upon lands, or if, when the entry is lawful and peaceable, the tenant shall detain the possession of land after his right has expired, without the consent of him who is entitled to the possession, the party so turned out of possession, no matter what right or title he had thereto, or the party against whom such possession is unlawfully detained may, within three years only after such forcible or unlawful entry, or such unlawful detainer, sue out" in the appropriate clerk's office "a summons against the defendant to answer the complaint of the plaintiff that the defendant is in possession and unlawfully withholds from the plaintiff the premises in question."

Section 5446 specifies how the process shall be served and returned, how the defendant shall plead, how the case shall be tried, and gives it precedence over "all other civil cases on the docket."

Section 5447 (as amended by Acts 1934, ch. 48, p. 43) provides for the verdict and judgment to be rendered. "If it appear that the plaintiff was forcibly or unlawfully turned out of possession, or that it was unlawfully detained from him" within three years of the date of the summons, "the verdict or judgment shall be for the plaintiff for the said premises, or such part thereof as may be found to have been so held or detained." By the 1934 amendment to the section, "The verdict or judgment shall also be for such damages as the plaintiff may prove to have been sustained by him by reason of such forcible or unlawful entry, or unlawful detention, of the said premises, and/or such rent as he may prove to have been owing to him at the time of the institution of the action".

It will be observed that the statute does not in express terms deprive the owner of the common-law right

to take possession by reasonable force of premises to which he may be entitled. While its purpose is to prevent violence and disturbances which are likely to follow when one entitled to the lawful possession of premises undertakes to assert his rights by force (*Southern R. Co.* v. *Lima Wood, etc., Co.,* 156 Va. 829, 833, 159 S. E. 69), the right of action is civil in character (*Kincheloe* v. *Tracewells,* 11 Gratt. (52 Va.) 587, 598), and the result, if the plaintiff prevails, is merely to restore the possession to one from whom it has been forcibly taken, or to give possession to one from whom it is being unlawfully withheld. "The judgment has only the effect of placing the parties *in statu quo.*" *Olinger* v. *Shepherd,* 12 Gratt. (53 Va.) 462, 473; *Davis* v. *Mayo,* 82 Va. 97, 99; *Southern R. Co.* v. *Lima Wood, etc., Co., supra* (156 Va. 829, at page 833, 159 S. E. 69).

In *Gower* v. *Waters,* 125 Me. 223, 132 A. 550, 552, 45 A. L. R. 309, it was held that the civil remedy afforded by the statutes of forcible entry and detainer did not deprive the landlord of his common-law right of entry.

Consequently, as is said in Burks Pleading and Practice, 3d Ed., section 105, p. 208, "The real owner, having a right of entry, will not commit a trespass by entering, though with force, unless he also commit a breach of the peace, but he may be turned out in an action of forcible entry." See also, *Davis* v. *Mayo, supra* (82 Va. 97, at page 99).

Moreover, the Virginia statute does not undertake to give a party forcibly dispossessed any right to institute a separate and independent action for damages therefor.

In Minor on Real Property, 2d Ed., Vol. 1, section 366, p. 474, it is said:

"The Virginia statute expressly provides for the recovery of land by the *writ of forcible entry* in cases where one, no matter how good or bad his title may be, is forcibly ejected from land by another; and this statute would undoubtedly embrace the case of a tenant by sufferance forcibly ejected from the premises by the landlord, and would give the tenant *the right to recover the possession.*

"But while the tenant may thus recover *the possession* upon a writ of forcible entry, and while the owner may even be liable *criminally* for his breach of the peace, the better opinion is that he is not liable *in a civil action* for trespass, nor for assault and battery, nor for injury to the occupant's goods."

See also, *Allen* v. *Gibson, supra* (4 Rand. (25 Va.) 468, at page 471); *Olinger* v. *Shepherd, supra* (12 Gratt. (53 Va.) 462, at page 472).

In *Virginia Iron, etc., Co.* v. *Dickenson,* 143 Va. 250, 129 S. E. 228, a tenant brought an action against the landlord for damages to the tenant's furniture which had been removed from the premises during his absence after the termination of the tenancy. The lease gave the landlord this right. In reversing a judgment for the plaintiff, we quoted with approval (143 Va., at page 257) the following language from 24 Cyc., page 1394 (now found in 36 C. J., Landlord and Tenant, section 1761, pp. 600, 601):

"The rule supported apparently by the weight of authority is that where the landlord has become entitled to immediate possession of the premises through expiration of the term or otherwise he may take such possession by force without incurring civil liability in case no more force than is reasonably necessary is employed, and although he may be subject to punishment criminally, under statutes relating to forcible entry and detainer."

In 22 Am. Jur., Forcible Entry and Detainer, section 11, p. 914, speaking of the effect of statutes of forcible entry and detainer, it is said: "They also give to one thus dispossessed a right to the restitution of the actual possession and create a special proceeding for its enforcement, without regard to the question of the entrant's title or right of possession, in the absence of any express provision to the contrary. But as respects the ordinary civil remedies, the common law is left as it was before the passing of the statutes. Consequently, by the weight of authority, where a party entering has the right of possession, he cannot be made an-

swerable in an action of trespass, ejectment, or other form of common-law action to the party forcibly dispossessed, where he uses no more force than is reasonably necessary to effect the eviction."

See also, Thompson on Real Property, Perm. Ed., Vol. 3, section 1516, pp. 790-1; 18 Am. & Eng. Ency. of Law, 2d Ed., p. 433; 33 Harvard Law Review, pp. 733-4.

In Thompson on Real Property, Perm. Ed., Vol. 3, section 1516, pp. 792-3, it is said: "Where the statutory remedy for forcible ejection from land is a civil action of forcible entry and detainer, there is no other remedy but what is afforded by those acts, and the evicted party can not bring trespass. The landlord's title and right to possession are a complete justification for his entry upon the land, and the tenant has against him no right of occupation whatever. Having obtained possession by an action of which the tenant has no right to complain, he can not be liable to an action for the incidental act of expulsion to which he is obliged to resort because of the tenant's unlawful resistance."

See also, these leading cases: *Walker* v. *Chanslor*, 153 Cal. 118, 94 P. 606, 126 Am. St. Rep. 61, 17 L. R. A. (N. S.) 455; *Gower* v. *Waters, supra; Low* v. *Elwell*, 121 Mass. 309, 23 Am. Rep. 272; *Souter* v. *Codman*, 14 R. I. 119, 51 Am. Rep. 364. Other cases supporting this as well as the contrary view are collected in the annotations in 45 A. L. R. 313; 49 A. L. R. 517; 60 A. L. R. 280; 141 A. L. R. 250.

Of course, liability for the use of excessive force by the landlord is recognized, and, as has been said, the court so instructed the jury in the case before us. The verdict in favor of the defendant is conclusive that excessive force was not employed by him.

■ On the whole we find no error in the judgment complained of, and accordingly it is

*Affirmed.*

BROWNING, J., dissenting.