COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Kelsey and Senior Judge Overton
Argued by teleconference


ANTONIO NOAH LASSITER
                                                    OPINION BY
v.      Record No. 2558-04-1               JUDGE NELSON T. OVERTON
                                                  OCTOBER 18, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Theresa B. Berry (Office of the Public Defender, on brief), for
appellant.

Susan L. Parrish, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


Appellant appeals from a decision of the trial court finding him guilty of statutory

burglary.  Appellant contends he could not be convicted of statutory burglary of a residence, in

which he was living, which was subject to an unlawful detainer action and which he was in the

process of vacating, when, before he could finish vacating, the landlord changed the locks and

took possession thereof contrary to statute.  Finding no error, we affirm appellant's conviction.

Background

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence proved that beginning in March 2003, appellant rented a

residence located at 773 Pine Lake Drive, in the City of Virginia Beach, from Edward Goodove.

Numerous disputes arose over the lease and rent, ultimately resulting in Goodove filing an

unlawful detainer against appellant. The court entered judgment for Goodove and ordered appellant and his family to vacate the property no later than August 15, 2003.

Goodove testified that appellant told him that he would be out of the house by August 15, 2003 and Goodove arranged to meet appellant at the residence on August 16, 2003, around 2:30 p.m., to "settle up, give him his refund back less any damages that were noted." On that date, around 2:30 p.m., Goodove and Curtis Holland, a security guard who met Goodove at the property to serve as a witness, arrived at the residence to meet appellant. Appellant was not present, and the house was unlocked and vacant. The home was empty, except for the garage, which had trash in it. Goodove described the trash as "[b]roken furniture, mattresses, [and] a dog cage" and "like a collection of Christmas decorations, gas cans, paint thinner, a lifesaving jacket maybe they discarded, batting tee, just a bunch of trash." The mattress was stained and "looked like it was trash." In addition, Goodove stated that there were some potato chips in the kitchen and "maybe a mop and a broom." Goodove went through the house with Holland, noting any damage that was present. Goodove noted the house was in "poor shape." There was damage to the walls and doors, and the carpet was dirty and damaged. At that time, there was no damage to the front door, the lighting fixtures, or Goodove's refrigerator, which was in the garage. Goodove noticed a storage pod and a portable basketball hoop in the driveway. Goodove also noticed a blue gasoline can with a black top located on the porch, which did not belong to him. Goodove changed the locks on the front door, put a vise grip on the garage door, and posted "No Trespassing" signs on the property. Then he locked and secured the residence, and he and Holland left around 5:30 p.m. At that time, Goodove gave a key to Holland, who was the only person who had permission to enter the residence. Goodove gave the key to Holland in case appellant wanted to check out the property with regard to the damage noted by Goodove, because Goodove was not going to communicate with appellant any longer.

Goodove returned home around 6:30 p.m. to 7:00 p.m. on August 16, 2003, and found phone messages from appellant on his answering machine. The trial court admitted into evidence a tape recording of appellant's calls. Appellant was belligerent and threatening during the calls, admitting that he had gotten into the house. He told Goodove that he knew where Goodove lived and that Goodove would not have the last laugh. Goodove felt threatened by the messages, and immediately notified the police.

Officer Curcione responded to Goodove's call around 10:00 p.m. to 10:30 p.m. that night. While Curcione was taking Goodove's statement, appellant called. Curcione answered the call, identified himself as a police officer, and told appellant that he needed to stop making the calls. Appellant became belligerent towards Curcione, yelling and screaming at him, which caused Curcione to hang up on appellant.

On the morning of August 17, 2003, Goodove returned to the residence located at 773 Pine Lake Drive. Goodove discovered that the house had been "ransacked" and saw a large amount of damage that had not been present the previous day. The door was "busted in," and a strong odor of gasoline permeated throughout the house. Glass fixtures in the hallway were shattered, a storm door was broken, gasoline was poured into a wood-burning stove, and the fire alarm was disabled. In addition, the refrigerator located in the garage was overturned, rendering it unsalvageable. Paint was spread across the garage floor. Goodove found a black cap from a gas can on the carpet inside the residence, which he identified as the same black cap from the blue gasoline can he had seen the day before on the porch. The storage pod and basketball hoop were still in the driveway, but had sustained no damage.

Detective Jennifer L. Hunter, who responded to the residence on the morning of August 17, 2003, smelled the strong odor of gasoline permeating the house and witnessed the damage to the door and inside the house. Hunter testified that the house was "completely empty." She

stated that there were some items in the garage, but did not recall what they were. At trial, the Commonwealth introduced evidence showing that the cost to repair the damage and replace the damaged property exceeded $1,000.

Detective Kevin Mullen interviewed appellant. Appellant denied that he had any reason to kick in the front door or pour gasoline on the carpet, because he was attempting to have his security deposit refunded. Appellant admitted that the gasoline can belonged to him and that he had used it earlier that day to fill his lawn mower. He also admitted that he had called and left messages for Goodove on August 16, 2003, while he was inside the residence located at 773 Pine Lake Drive. Appellant admitted the court had ordered him to vacate the property by August 15, 2003, but claimed he believed that Goodove was still required to return to court and file another eviction process if appellant had not left the property by that date. Appellant claimed that he left messages for Goodove on August 16, 2003, indicating that he was inside the home, and that it was still his because there were no court papers telling him to vacate.

Appellant's wife testified that they cleaned and vacated Goodove's house before dinnertime on August 15, 2003 and that she and her children went to a hotel that day. She admitted that the house was "completely ready and vacated when they left" on August 15, 2003.

Appellant testified that he went to court with Goodove on August 4, 2003, with respect to the Pine Lake Drive property. Appellant admitted he was aware the court had granted Goodove an unlawful detainer. Appellant also acknowledged that the court ordered him to vacate the property by August 15, 2003. However, appellant claimed that the court instructed Goodove to return and obtain a writ of possession if appellant failed to vacate the property by August 15, 2003, which would remove him within seventy-two hours. Appellant testified that he called Goodove, who had agreed to meet appellant at the property on August 16, 2003, and left a message that he had been unable to remove all of his belongings from the property. Appellant

claimed he was still moving out on August 16, 2003 and that he left the property briefly to get cleaning supplies. When he returned, he found that "No Trespassing" signs had been posted and the locks were changed, even though he claimed to still have property in the residence. He was upset and called Goodove several times. Appellant admitted that he opened the back sliding door, which he claimed was not secured, entered the residence, and finished removing his belongings. Appellant testified that his wife "mixed up" the date as to when they vacated the residence.

On appeal, appellant argues that Goodove was in the wrong because, instead of pursuing appropriate legal action to obtain a writ of possession for the home, Goodove entered the property, changed the locks, and made it impossible for appellant to re-enter and finish clearing his belongings from the residence. Appellant, citing Code § 8.01-124, argues he was still in legal possession of the home and had every right to enter it and obtain his belongings and, therefore, he could not be convicted of breaking and entering property to which he had a legal right of possession. We disagree.

Analysis

Code § 55-225, part of the Virginia Residential Landlord and Tenant Act, provides as follows:

> If any tenant or lessee of premises in a city or town, or in any subdivision of suburban and other lands divided into building lots for residential purposes, or of premises anywhere used for residential purposes, and not for farming or agriculture, being in default in the payment of rent, shall so continue for five days after notice, in writing, requiring possession of the premises or the payment of rent, such tenant or lessee shall thereby forfeit his right to the possession. In such case the possession of the defendant may, at the option of the landlord or lessor, be deemed unlawful, and he may proceed to recover in the same manner provided by Article 13 (§ 8.01-124 et seq.) of Chapter 3 of Title 8.01.

Code § 55-248.35 provides in pertinent part the procedure to be followed once a rental agreement is terminated:

> If the rental agreement is terminated, the landlord may have a claim for possession and for rent and a separate claim for actual damages for breach of the rental agreement, reasonable attorney's fees as provided in § 55-248.31, and the cost of service of any notice under § 55-225 or § 55-248.31 or process by a sheriff or private process server which cost shall not exceed the amount authorized by § 55-248.31:1, which claims may be enforced, without limitation, by the institution of an action for unlawful entry or detainer. . . .
>
> In any unlawful detainer action brought by the landlord, this section shall not be construed to prevent the landlord from being granted by the court a simultaneous judgment for money due and for possession of the premises without a credit for any security deposit. Upon the tenant vacating the premises either voluntarily or by a writ of possession, security deposits shall be credited to the tenants' account by the landlord in accordance with the requirements of § 55-248.15:1.

Code § 8.01-126 further provides in pertinent part the procedure regarding unlawful detainer actions:

> In any case when possession of any house, land or tenement is unlawfully detained by the person in possession thereof, the landlord . . . entitled to the possession may present to a magistrate, clerk or judge of a general district court a statement under oath of the facts which authorize the removal of the tenant or other person in possession, describing such premises; and thereupon such magistrate, clerk or judge of a general district court shall issue his summons against the person or persons named in such affidavit. The process issued upon any such summons issued by a magistrate, clerk or judge may be served as provided in §§ 8.01-293 and 8.01-296 or § 8.01-299. When issued by a magistrate it may be returned to and the case heard and determined by the judge of a general district court. If the summons for unlawful detainer is filed to terminate a tenancy pursuant to the Virginia Residential Landlord Tenant Act (§ 55-248.2 et seq.), the initial hearing on such summons shall occur as soon as practicable, but not more than twenty-one days from the date of filing. . . .

A landlord has a common law right to retake possession of property so long as doing so will not effect a breach of the peace. Shorter v. Shelton, 183 Va. 819, 827, 33 S.E.2d 643, 647

(1945). An unlawful detainer action serves the purpose of restoring "possession to one from whom it is being unlawfully withheld. 'The judgment has only the effect of placing the parties in statu[s] quo.'" Id. at 826-27, 33 S.E.2d at 647 (citations omitted). In an unlawful detainer action, the court orders the tenant to vacate the property by a certain date, as occurred in this case, August 15, 2003. The unlawful detainer action is governed by Code § 8.01-126. Nothing in the unlawful detainer statute requires the landlord, who has successfully pursued an unlawful detainer action, to obtain a writ of possession in order to recover the property. Furthermore, Code § 8.01-470, cited by appellant as support for his argument that Goodove was required to obtain a writ of possession, only provides that a writ of possession *may* issue for the recovery of specific real or personal property, but does not use language indicating the writ is mandatory.

Here, the evidence, viewed in the light most favorable to the Commonwealth, proved that Goodove had successfully pursued an unlawful detainer action against appellant before August 15, 2003. The court gave possession of the property to Goodove and ordered appellant and his family to vacate the property by August 15, 2003. According to appellant's wife, the family complied with that order by completely vacating the property and moving to a temporary residence on August 15, 2003. The fact finder was entitled to accept her testimony, which was corroborated by Goodove's and Hunter's testimony that the house was empty, except for trash in the garage. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Goodove testified that on August 16, 2003, one day after appellant had vacated the property and had no legal right to enter it, Goodove entered the property. Appellant was not present, and the house was unlocked, vacant, and essentially empty. Goodove took possession of the property, without effecting a breach of the peace, locked and secured it, and posted "No

Trespassing" signs. At that point, appellant, who had vacated the property, had no legal right to break and enter the property. Thus, we find no merit in appellant's argument.

Even if we assume without deciding that appellant had not vacated the property as of August 15, 2003, as ordered by the court, the evidence proved that Goodove took possession of the property on August 16, 2003 without effecting a breach of the peace, as provided by common law, and pursuant to a court order giving him possession. Under those circumstances, appellant had no right to break and enter the property.[1]

For these reasons, we affirm appellant's conviction for statutory burglary.

Affirmed.

---

[1] We note that Code § 55-225.1 provides in pertinent part that "[a] landlord may not recover or take possession of a residential dwelling unit by . . . refusal to permit the tenant access to the unit unless such refusal is pursuant to the execution of a writ of possession." However, a tenant's remedy for such a situation is not to break and enter a residence, but rather is provided under Code § 55-225.2. That code section provides that "if a landlord unlawfully removes or excludes a tenant from residential premises . . . the tenant may recover possession . . . and recover damages sustained by him and reasonable attorney's fees." Moreover, no evidence in this case proved that Goodove would have refused appellant access to the premises to remove any personal items he claimed were still there.