COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Petty and Beales
Argued at Chesapeake, Virginia


JAMES DARIO MACIEL, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 2440-09-1      JUDGE RANDOLPH A. BEALES
JANUARY 11, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge

Christopher T. Hedrick (William B. Smith; Dickerson & Smith Law
Group, P.C., on brief), for appellant.

Susan M. Harris, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Amicus Curiae: J. Bradley Reaves; Virginia Association of
College and University Housing Officers (R. Ellen Coley;
Kaufman & Canoles, P.C., on brief), for appellee.


James Dario Maciel, Jr. (appellant) was convicted of trespassing, in violation of Code

§ 18.2-119. On appeal, appellant argues that he should not have been convicted of trespassing

because he retained legal authority to occupy the apartment that he had been renting from Regent

University (Regent) and, therefore, was not trespassing. Alternatively, appellant argues that he

believed in good faith that he retained authority to occupy the apartment and, therefore, established

an affirmative defense to a trespassing conviction. For the following reasons, we affirm.

I. BACKGROUND

In August 2008, appellant entered into a lease agreement for an apartment in Regent

Village, an on-campus, university-owned housing facility for Regent graduate students and their

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

families.[1]  The initial term of appellant's lease ran from August 1, 2008 to December 31, 2008, which coincided with the dates for the fall semester of 2008 – appellant's first semester as a graduate student at Regent.

The lease agreement signed by appellant provides that appellant's lease could be renewed for a term of January 1, 2009 to May 31, 2009, which was related to Regent's spring semester of 2009.  Although the lease agreement contemplates further renewals through appellant's completion of his graduate studies at Regent, it also provides that "[e]ither Lessor or Lessee may terminate this Lease at the end of the initial term or at the end of any renewal term by giving the other party written notice of termination."

According to the lease agreement, occupancy at Regent Village is limited to "eligible students, members of their immediate family, and full-time Student Housing staff."  The lease agreement provides that "[d]ismissal as a student at Regent University for any reason . . . shall immediately terminate" appellant's eligibility for living in student housing.  The lease agreement also requires appellant and his immediate family "to vacate the premises immediately," at Regent's request, upon termination of appellant's eligibility to live in student housing.

In late April 2009, when he had completed his coursework for the spring semester, appellant notified the university registrar that he intended to withdraw from Regent.  Regent's student housing department stated that appellant could remain in the Regent Village apartment until May 10, 2009, and the student housing department noted that it then "changed [his] vacate date" to May 31, 2009, which the lease agreement indicates would be the final day of the lease renewal term related to the spring semester.  Appellant then requested an additional two weeks beyond this May 31, 2009 deadline.  Scott Brown, Regent's director of student housing, denied this request for additional time,

---

[1] Appellant resided at the apartment with his wife, who also signed the lease, and their young child.

maintaining that appellant and his family could not occupy the apartment beyond May 31, 2009, as it was the final day of the lease renewal term related to the spring semester.

However, appellant continued to occupy the apartment after May 31, 2009. On June 1, 2009, Brown instructed his staff to change the apartment's locks. When appellant discovered that the locks had been changed, he entered the apartment through a window and sent Brown an email, stating, "I am contacting you and let[ting] you know that we are still in the unit and have not left. We plan on staying in this unit for another 1-2 weeks. What I need to know is when will someone come out and put the lock back on the door?" Appellant and Brown met in person later that day. Brown told appellant that he had until 3:00 p.m. to vacate the apartment.

Appellant was still inside the apartment when Brown arrived with some university police officers shortly after 3:00 p.m. on June 1, 2009. Appellant refused to leave, claiming that he had "every right" to continue occupying the apartment. Appellant was arrested for trespassing.

At his bench trial, appellant testified that he felt "entitled" to remain in the apartment because he had talked to three law firms and a magistrate before Brown and the university police arrived. After the conclusion of all the evidence, the trial court rejected appellant's argument that Regent was required to obtain a writ of possession to recover possession of the apartment and also rejected appellant's affirmative defense that he believed in good faith that he had a bona fide claim of right to continue occupying the apartment.

## II. ANALYSIS

"If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof," the person shall be convicted of trespassing, a Class 1 misdemeanor. Code § 18.2-119. Thus, "Code § 18.2-119 criminalizes trespass by those who go on the property of another 'without

- 3 -

authority of law' after 'having been forbidden to do so' by a lawful possessor. The warning can be 'either orally or in writing' or by 'a sign or signs' posted by the lawful possessor." Raab v. Commonwealth, 50 Va. App. 577, 582, 652 S.E.2d 144, 147 (2007) (en banc) (quoting Code § 18.2-119). Appellant contends that the trial court erred in convicting him of trespass because Regent did not obtain a writ of possession for the apartment under Code § 55-225.1 and, thus, he remained in the apartment under the "authority of law." He also contends that he had a good faith belief that his continued occupancy of the apartment was legal and, therefore, the trial court erred in convicting him of trespassing. We find neither argument persuasive.

A. Applicability of Code § 55-225.1

"A landlord has a common law right to retake possession of property so long as doing so will not effect a breach of the peace." Lassiter v. Commonwealth, 46 Va. App. 604, 611, 620 S.E.2d 563, 566 (2005); see Shorter v. Shelton, 183 Va. 819, 826-27, 33 S.E.2d 643, 647 (1945) (noting that a landowner has "the common-law right to take possession by reasonable force of premises to which he may be entitled"). Notwithstanding this common law right of landowners, appellant argues that Code § 55-225.1 required Regent to obtain a writ of possession before forcing him to vacate the Regent Village apartment.

Code § 55-225.1 states:

> *A landlord may not recover or take possession of a residential dwelling unit by* (i) willful diminution of services to the tenant by interrupting or causing the interruption of electric, gas, water or other essential service required to be supplied by the landlord under a rental agreement or (ii) *refusal to permit the tenant access to the unit unless such refusal is pursuant to the execution of a writ of possession.*

(Emphasis added). Since it is undisputed that Regent did not obtain a writ of possession for the apartment, appellant contends that he continued to occupy the apartment lawfully.

- 4 -

As an appellate court, we review issues of statutory interpretation *de novo*.  Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008).  "'[U]nder basic rules of statutory construction, we determine the General Assembly's intent from the words contained in the statute.'" Baker v. Commonwealth, 278 Va. 656, 660, 685 S.E.2d 661, 663 (2009) (quoting Elliott v. Commonwealth, 277 Va. 457, 463, 675 S.E.2d 178, 182 (2009)).  "'When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated.'"  Id. (quoting Elliott, 277 Va. at 463, 675 S.E.2d at 182).  "Courts cannot 'add language to the statute the General Assembly has not seen fit to include.'"  Washington v. Commonwealth, 272 Va. 449, 459, 634 S.E.2d 310, 316 (2006) (quoting Holsapple v. Commonwealth, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003)).

The General Assembly enacted the Virginia Residential Landlord and Tenant Act (the VRLTA) "to establish a single body of law relating to landlord and tenant relations throughout the Commonwealth."  Code § 55-248.3.  However, certain types of landlord-tenant arrangements are exempted from the scope of the VRLTA.  As appellant readily acknowledges, the VRLTA's provisions are wholly inapplicable in this case because appellant leased the Regent Village apartment as a Regent student.  See Code § 55-248.5 (exempting from the VRLTA "[r]esidence at a public or private institution, if incidental to detention or the provision of medical, geriatric, *educational*, counseling, religious or similar services" (emphasis added)).

Instead of pointing to the provisions of the VRLTA, appellant argues that Code § 55-225.1 – which is not part of the VRLTA – applies here.  Code § 55-225.1 is part of a collection of statutes within Title 55, Chapter 13 of the Virginia Code (Chapter 13 statutes).  For the purpose of this case, there is a significant difference between the VRLTA and the Chapter 13 statutes, such as Code § 55-225.1.  The plain language of the VRLTA expressly prohibits the

waiver of any of the rights in the VRLTA or those rights in the Chapter 13 statutes, provided that the VRLTA applies. See Code § 55-248.9(A)(1) and (2). Unlike the VRLTA, however, the plain language found in Chapter 13 *does not* prohibit the contracting parties from waiving statutory rights or requirements when they enter into lease agreements. Thus, both the Supreme Court of Virginia and the United States Court of Appeals for the Fourth Circuit have held that the provisions of Chapter 13 were inapplicable when the parties clearly and unambiguously agreed to terms that differed from those statutory provisions.[2] See Marina Shores, Ltd. v. Cohn-Phillips, Ltd., 246 Va. 222, 225-26, 435 S.E.2d 136, 138 (1993) ("The provisions of Code § 55-225 were not applicable" where "the contracting parties, in clear and unambiguous language, agreed that nonpayment of rent would constitute a default and breach of the lease."); see also Ten Braak v. Waffle Shops, Inc., 542 F.2d 919, 925 n.8 (4th Cir. 1976) ("Virginia's statutory re-entry provisions (Va. Code §§ 55-224, -225) have no application when the parties provide by contract for re-entry upon default in the payment of rent.").

Accordingly, we must look to the lease agreement between appellant and Regent to determine whether the requirements of Code § 55-225.1 were even applicable here. We note that, in the context of a lease agreement,

> [t]he parties' contract becomes the law of the case unless it is violative of some rule of law or against public policy. Winn v. Aleda Constr. Co., 227 Va. 304, 307, 315 S.E.2d 193, 194 (1984). When the terms of a contract are clear and unambiguous, the terms will be given their plain and ordinary meaning. Marriott Corp. v. Combined Properties, 239 Va. 506, 512, 391 S.E.2d 313, 316 (1990).

Marina Shores, Ltd., 246 Va. at 225-26, 435 S.E.2d at 138.

---

[2] "[I]f the legislature intends to countermand such appellate decision it must do so explicitly." Weathers v. Commonwealth, 262 Va. 803, 805, 553 S.E.2d 729, 730 (2001). The legislature has taken no action to include in Chapter 13 a "no waiver" provision similar to the provision that is already found in the VRLTA.

Here, the lease agreement states, "This Lease is the entire agreement between the parties, and no modification or addition to it shall be binding unless signed by the parties hereto." The lease agreement gives Regent the ability to terminate the lease "at the end of the initial term *or at the end of any renewal term* by giving the other party written notice of termination."[3] (Emphasis added). When appellant informed the university registrar toward the end of the spring semester of 2009 that he intended to withdraw from Regent, the university's student housing department provided notice of its intent to terminate the lease and directed appellant to vacate the Regent Village apartment by May 31, 2009 – the last day of the lease renewal term related to the spring semester. Regent's deadline was consistent with the lease agreement, as appellant's eligibility to reside in student housing was *conditioned* upon his status as a Regent student. His decision to withdraw from the university after completing his coursework for the spring semester of 2009 rendered him and his family ineligible to reside at Regent Village as he was no longer a Regent student. "Upon such termination of eligibility," the lease agreement provides, Regent was entitled to require appellant (and his family) "to vacate the premises immediately."

Thus, by entering into the lease agreement, which states that it comprises "the entire agreement between the parties," appellant clearly and unambiguously agreed that Regent could require him to vacate the apartment *immediately* if he was no longer eligible to reside at Regent Village – and, based on the record here, appellant was not eligible to reside in the apartment beyond May 31, 2009, the final day of his lease renewal term for the spring semester. The lease agreement did not require Regent to obtain a writ of possession if appellant continued to occupy the apartment beyond his period of eligibility. Accordingly, Code § 55-225.1 has no applicability to this case.

_____

[3] Appellant does not contend on appeal that Regent failed to satisfy the lease agreement's written notice requirements.

- 7 -

B. Good Faith Belief of Bona Fide Claim of Right

Appellant argues that, even if Regent was not required to obtain a writ of possession prior to removing him from the Regent Village apartment, he believed in good faith that he had a bona fide claim of right to continue occupying the apartment. Therefore, he contends that he did not intend to trespass and, consequently, that the trial court erred when it convicted him.

Code § 18.2-119 "has been uniformly construed to require a *willful* trespass." Reed v. Commonwealth, 6 Va. App. 65, 70, 366 S.E.2d 274, 278 (1988) (emphasis added); see Commonwealth v. Hicks, 267 Va. 573, 583, 596 S.E.2d 74, 79 (2004) (noting that Code § 18.2-119 "has an intent requirement [and] the Commonwealth was required to prove that Hicks committed an act of intentional trespass"). Consequently, a person "cannot be convicted of trespass when one enters or stays upon the land under a bona fide claim of right. A good faith belief that one has a right to be on the premises negates criminal intent." Reed, 6 Va. App. at 72, 366 S.E.2d at 278 (citation omitted).

"[C]laim of right is an affirmative defense," id. at 70, 366 S.E.2d at 277, and the burden is on a defendant who raises an affirmative defense "to present evidence establishing such defense to the satisfaction of the fact finder," Riley v. Commonwealth, 277 Va. 467, 479, 675 S.E.2d 168, 175 (2009). The trial court here, acting as factfinder, rejected appellant's affirmative defense. As an appellate court reviewing the trial court's verdict, this Court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This Court will "let the decision stand unless we conclude no rational [factfinder] could have reached that decision." Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (en banc), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003).

Viewing the evidence below in the light most favorable to the Commonwealth, "as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), appellant informed the university registrar of his intention to withdraw from Regent after completing his coursework for the spring semester in late April of 2009.  Given that appellant had completed his coursework and had decided to withdraw from further graduate studies, appellant and the university's student housing department initially agreed that the apartment would be vacated by May 10, 2009.  The student housing department then "changed [his] vacate date" to three weeks later, May 31, 2009.  Appellant then requested two weeks of *additional* time, but Brown, Regent's director of student housing, denied the request.  Thus, appellant was aware that he was not permitted to occupy the apartment beyond May 31, 2009.

However, appellant continued to occupy the apartment on June 1, 2009, one day *after* Brown's deadline to vacate the apartment.  Even after Brown had the apartment's locks changed, appellant *continued* to occupy the apartment – and continued to insist that he would be there for another week or two.  Brown agreed to *one more* very brief extension of time – until 3:00 p.m. on June 1 – but appellant continued to occupy the apartment even after this final deadline had passed, resulting in his arrest for trespassing.

Appellant points to his testimony at trial that he contacted three law firms and a magistrate as sufficient evidence to establish his affirmative defense that he was occupying the apartment in good faith.  However, the trial court sustained the Commonwealth's hearsay objections concerning *the content* of these conversations.[4]  Appellant did not then call any witnesses who could testify about the content of these conversations.  Given the very thin evidentiary support offered for appellant's affirmative defense, the trial court's rejection of this

_____

[4] Appellant did not appeal this evidentiary ruling by the trial court, and, therefore, it is not before this Court on appeal.

affirmative defense was not plainly wrong in this case.  See Code § 8.01-680; Jackson, 443 U.S. at 319; Pease, 39 Va. App. at 355, 573 S.E.2d at 278.

### III.  CONCLUSION

Appellant willfully trespassed by continuing to occupy the Regent Village apartment without the authority of law and after Regent had clearly forbidden him to do so.  See Code § 18.2-119.  Moreover, a rational factfinder certainly could have rejected appellant's affirmative defense by finding that appellant failed to establish, as this Court's decision in Reed requires, a "sincere, although perhaps mistaken, good faith belief" that he had "some legal right" to continue occupying the apartment.  Reed, 6 Va. App. at 71, 366 S.E.2d at 278.  Accordingly, for the foregoing reasons, we affirm appellant's conviction for trespassing.

Affirmed.